COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| CABOT CAPITAL CORPORATION and CABOT ESTATES, LLC, | § | No. 08-07-00202-CV |
| | § | |
| Appellants, | § | Appeal from the |
| | § | |
| v. | § | 96th Judicial District Court |
| | § | |
| | § | of Tarrant County, Texas |
| USDR, INC. and JOHN ROBINSON, | § | |
| | § | (TC# 096-203847-04) |
| Appellees. | § | |

## **O P I N I O N**

This is an appeal of a take-nothing judgment from a deficiency claim on secured loans after foreclosure of real property, and a claim seeking equitable subrogation to tax liens upon adjoining property for taxes paid in error by Cabot Capital to Tarrant County.

Appellant, Cabot Capital Corporation ("Cabot Capital"), is a California corporation that acted as a loan servicing agent from November 2002 for certain lenders, which funded loans to USDR, Inc. ("USDR"), a Nevada corporation licensed to do business in Texas. Cabot Estates, LLC ("Cabot Estates") is a Texas company, and is the successor in interest to the lenders and current holder and owner of the notes made to USDR. USDR owned real property in Texas, which was mortgaged to secure the loans. John Robinson is the majority shareholder, CEO, and director of USDR. Mr. Robinson was guarantor for the loans made to USDR. All the loans had matured by July 1, 2002, and at least one extension agreement was entered into. USDR did not comply with the extension agreement by failing to make the March 2003 payment, and Cabot Capital sent notice to USDR that it would foreclose on the property through nonjudicial

foreclosure. Cabot Capital successfully bid $4,000,000 at the foreclosure sale on May 6, 2003. USDR had failed to pay ad valorem taxes on the property, and Cabot Capital was required to pay the amount due to halt foreclosure litigation that had been commenced by Mansfield Independent School District and Tarrant County. While paying these taxes, Cabot Capital inadvertently paid $8,380.06 after receiving a bill for past due taxes on a connected tract of land of 10.046 acres (the "outparcel"), which was thought to be part of the mortgaged property. Cabot Capital discovered the outparcel was not part of the mortgaged property after obtaining a complete survey of the land. Cabot Capital inquired about receiving a refund for the mistakenly paid taxes, but would not receive it until the taxes were paid by USDR. The trial court found that Cabot Capital was entitled to be equitably subrogated to rights of the Tarrant County taxing authorities and their liens on the outparcel. The trial court found USDR and Mr. Robinson owed Cabot Capital $6,002,407.83 as of the date of foreclosure, and the property had a fair market value of $7,609,800. The fair market value was reached by summing the value of the one building on the property, $2,884,800 (72,120 sq. ft. × $40.00 per sq. ft.), and the value of the raw acreage, $4,725,000 (135 acres × $35,000 per acre).

At trial, both sides produced appraisers to prove the value of the property. Jody Briggs, a certified general real estate appraiser and member of the Appraisal Institute, was retained by the Plaintiffs. In 2006, Mr. Briggs appraised the property for fee simple with an effective date of May 6, 2003. Mr. Briggs used the cost approach, the sales comparison approach, and the income approach in valuing the property. Mr. Briggs did a retrospective appraisal and limited his comparison sales to May through June of 2003. Mr. Briggs appraised the value of the property at $3,500,000. Mr. Briggs testified that the property had significantly changed from the effective

date of the appraisal to when he visited the site. There had been originally twelve buildings, but when Mr. Briggs visited only one was left standing. Mr. Briggs was aware of the amount of the foreclosure bid prior to appraising the property.

Ms. Misty Goodrich testified under subpoena for the Defendants. Ms. Goodrich is a Texas certified general real estate appraiser, has a real estate broker's license, and is a member of the Appraisal Institute. Ms. Goodrich first appraised the property for Mr. Robinson in 1996. The first appraisal is only for Building A in Research Park, which was the administrative building. The appraisal value of the building by itself was $1,600,000. The second appraisal covered Phase I of Research Park. The second appraisal valued the property at $8,050,000 on October 30, 1996. The second appraisal was a discounted present worth of the proposed property. The second appraisal was of 161.5 acres of property. Plaintiffs' objected to the admission of these two appraisal reports based on relevancy and that the appraisals were not of the property at issue since one was of a single building and the other included acreage that was no longer part of the property at issue. Ms. Goodrich's third appraisal was dated November 1, 2000 and was a restricted use limited appraisal. The property was appraised using the sales comparison approach, and using the income approach to analyze improved property. The appraisal covered 135.686 acres of land, and found a value range of $11,460,000 to $11,955,000. Ms. Goodrich's fourth appraisal was done for the purpose of developing an opinion of the market value of the leased fee interest in the subject property as of September 1, 2001. The appraisal was conducted using the sales comparison approach. The appraisal states the leased value of the property in use is $7,437,000. However, Julie Seaman testified that the rent rolls used by Ms. Goodrich contained incorrect dates, tenant names, and rental rates. The total value appraised was $11,500,000.

Plaintiffs objected to this appraisal stating that the appraisal is too remote in time to be relevant, and also the late production of the appraisal. The appraisal was produced three days before trial. Ms. Goodrich testified on cross-examination that an appraisal nine and half years prior to appraisal would not be a reliable indicator of value. Ms. Goodrich also testified that September 11, 2001 caused a significant negative impact on the economy and could have impacted her opinion of the value.

Mr. Briggs testified in rebuttal to Ms. Goodrich's testimony, and stated that the comparable sales used were not comparable, and in fact were meaningless in comparison since the other properties were in much more developed areas. Mr. Briggs also opined that the adjustments made for the properties were improper. When asked by the trial court, Mr. Briggs testified the building would be worth $35 to $40 per square foot in today's dollars.

Marvin Donald Bergman, the president of Cabot Capital and manager of Cabot Estates, testified that he had been involved with the USDR loans from the first one that was made. Mr. Bergman believed the property to be worth $4,000,000 based on rental values of the buildings, value of the land to be developed into residential property, and the costs to complete the property based on the condition of the property at that time. It was also based on the county tax appraisal value of $4,140,000 for 147 acres.

Mr. Robinson testified by way of having his deposition read in open court. Mr. Robinson stated the property, had it not been foreclosed on, would have a market value of $11,406,000. Plaintiffs objected to the lay opinion testimony. Mr. Robinson stated he did not know if he was currently an officer of USDR, and did not believe he was currently the director of USDR. Mr. Robinson stated that the county tax appraisals are not reliable, are usually two-thirds below

what the price should be, and are always significantly lower than market values. When questioned about when he acquired a stake in USDR, Mr. Robinson stated there were a number of USDR companies and he was not sure which was which. He stated he has always been the majority shareholder in all the companies. Mr. Robinson stated that his opinion was based on the appraisal marked Deposition Exhibit 4, what the market was doing, what the property was like, and what could be done with the undeveloped portion of the property. Defendant's Exhibit 3 was admitted during the testimony of Mr. Robinson based on Plaintiffs' counsel referencing the appraisal document during cross-examination. Mr. Robinson could not recall which tenants were still on the property as of March 2003.

The trial court found no deficiency existed as a result of the foreclosure of the secured property and entered a take-nothing judgment for the Plaintiffs. The trial court entered findings of fact and conclusions of law. Plaintiffs moved to amend the court's findings of fact and conclusion of law and requested additional findings and conclusions, and filed a supplemental request for additional findings and conclusions. These motions were overruled by the filing of the judgment. Plaintiffs filed a motion to alter or amend the judgment and a motion for new trial, which the trial court denied.

On appeal, Plaintiffs argue that the trial court erred: (1) as a matter of law in calculating plaintiffs' deficiency claim based on the court's determination of market value of the mortgaged property; (2) in admitting Defendants' Exhibit 4 and permitting expert testimony on it; (3) as a matter of law in granting the Defendants the benefit of Texas Property Code § 51.003 without sufficient competent evidence; (4) in refusing to rule on Mr. Robinson's waiver of the affirmative defense under Texas Property Code § 51.003; (5) by finding a market value of the property that

was against the great weight of the evidence; (6) in admitting the opinion testimony of Mr. Robinson without any showing of competency under Texas Rule of Evidence 701; and (7) in refusing to grant Plaintiffs an equitable lien on the outparcel.

We will address Issues Five and Six first. In Issue Five, Appellants argue the trial court's determination of market value of the mortgaged property was supported by no evidence, and in the alternative, was against the great weight of the evidence. Findings of fact made by the trial judge, sitting as the fact finder, are treated the same as findings from a jury. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). Where the party with the burden of proof is challenging the factual sufficiency of the findings, the appropriate complaint is that the adverse findings are "against the great weight and preponderance of the evidence." *Tate v. Tate*, 55 S.W.3d 1, 5 (Tex.App.--El Paso 2000, no pet.). When the party without the burden of proof suffers an unfavorable finding, the challenge on appeal is one of "no evidence to support the finding." *In re Estate of Livingston*, 999 S.W.2d 874, 879 (Tex.App.--El Paso 1999, no pet.). A no evidence, or legal insufficiency, point is a question of law which challenges the legal sufficiency of the evidence to support a particular fact-finding. *Serrano v. Union Planters Bank, N.A.*, 162 S.W.3d 576, 580 (Tex.App.--El Paso 2004, pet. denied). In reviewing a factual sufficiency point, we must consider all of the evidence and determine whether the adverse finding was so against the great weight and preponderance of the evidence that it was clearly wrong and unjust. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). An appellate court will sustain a legal sufficiency challenge, if the records shows: (1) the complete absence of a vital fact; (2) that the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) that the evidence offered to prove a vital fact is no more than a scintilla; or (4) that the

evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). We do not pass upon the witness' credibility nor do we substitute our judgment for that of the fact finder, even if evidence would clearly support a different result. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex.), *cert. denied*, 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998). In conducting a sufficiency review, we consider all the evidence admitted at trial, even improperly admitted evidence. *Moff v. State*, 131 S.W.3d 485, 488 (Tex.Crim.App. 2004).

Fair market value is defined as the price the property will bring when offered for sale by one who desires to sell, but is not obliged to sell, and is bought by one who desires to buy, but is under no necessity of buying. *City of Pearland v. Alexander*, 483 S.W.2d 244, 247 (Tex. 1972). In this case, the fair market value to be determined was the value of the property at the time of the foreclosure. *See* TEX.PROP.CODE ANN. § 51.003(b), (c)(Vernon 2007). The burden of proof of the fair market value was on Appellees since the offset under Texas Property Code § 51.003 is an affirmative defense.

Mr. Briggs retrospectively appraised the value of the property at $3,500,000 at the time of foreclosure. Ms. Goodrich provided four appraisals of the property. In her first appraisal, Ms. Goodrich valued a building on the property to be worth $1,600,000. Her second appraisal, which included a portion of the property that was subsequently sold, valued the property at $8,050,000 on October 30, 1996. The third appraisal, which was a limited use appraisal, found a value range of $11,460,000 to $11,955,000 on November 1, 2000. The fourth appraisal valued the property at $11,500,000 as of September 1, 2001, but was based on incorrect rent rolls. Ms. Goodrich's fourth appraisal also showed comparable sales for $32,666-$35,081 per acre.

Mr. Bergman testified he valued the property at the time of foreclosure to be $4,000,000.

Mr. Robinson testified that he believed the value of the property to be $11,406,000.

The trial court found the fair market value by summing the value of one building on the property, $2,884,800, (72,000 sq. ft. × $40.00 per sq. ft.), and the value of the raw acreage, $4,725,000 (135 acres × $35,000 per acre). Mr. Briggs had testified that in today's dollars the building would be worth thirty-five to forty dollars per square foot. The evidence conclusively establishes that the trial court's valuation was made using the value at the time of trial rather than the market value at the time of foreclosure. Issue Five is sustained.

In Issue Six, Appellant argues the court erred in admitting opinion testimony of Mr. Robinson without any showing of competency under Texas Rule of Evidence 701. Rule 701 states: "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or determination of a fact issue." TEX.R.EVID. 701. Appellants argue it was error for the court to allow testimony from Mr. Robinson regarding the value of the mortgaged property. A property owner is qualified to testify to the market value of his property. *Redman Homes, Inc. v. Ivy*, 920 S.W.2d 664, 669 (Tex. 1996). The testimony must indicate that the owner's assessment is based on the market and not on the intrinsic value of the property to him. *Jabri v. Alsayyed*, 145 S.W.3d 660, 667 (Tex.App.--Houston [14th Dist.] 2004, no pet.). The principal of a closely held corporation may testify as to the value of land owned by the corporation. *Maxey v. Texas Commerce Bank of Lubbock*, 571 S.W.2d 39, 46 (Tex.Civ.App.--Amarillo 1978, writ ref'd n.r.e.). The sole shareholder and president of a closely held corporation has also been permitted

to testify as to the value of property of a corporation. *Bower v. Processor and Chemical Service, Inc.*, 672 S.W.2d 30, 32 (Tex.App.--Houston [14th Dist.] 1984, no writ). Mr. Robinson was the majority shareholder and sole director of USDR at the time of foreclosure. Mr. Robinson stated the market value of the property was $11,406,000. This determination was based on knowledge gained through experience in the purchase and sale of properties, review of privately commissioned appraisals, and review of county tax appraisals. The opinion was based in part on Ms. Goodrich's limited use appraisal. The appraisal valued the properties using the leases that were in existence at the time. The appraisal determined the property value to be $11,460,000. However, Mr. Robinson also testified that he was not aware of which tenants were still on the property and paying rent. When specifically questioned about USDR and the property, Mr. Robinson could not recall the details. We find Mr. Robinson's testimony should have been excluded under Texas Rule of Evidence 701. Issue Six is sustained. Since Issues Five and Six are dispositive, we do not address Appellants' remaining issues. TEX.R.APP.P. 47.1.

We reverse the judgment of the trial court and remand for a new trial.


April 30, 2009

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Rivera, JJ.