**REVERSE and REMAND; Opinion issued March 28, 2013**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

————————————————————

## No. 05-10-00235-CV
————————————————————

**WILLIAM MARTIN, Appellant**

**V.**

**PLAINSCAPITAL BANK, Appellee**

═══════════════════════════════════════════════

**On Appeal from the 429th District Court**
**Collin County, Texas**
**Trial Court Cause No. 429-01773-2008**
═══════════════════════════════════════════════

## OPINION

Before Justices Bridges, Murphy, and Richter[1]
Opinion By Justice Bridges

William Martin appeals the trial court's judgment awarding PlainsCapital Bank $332,927.27 in damages and $127,558.24 in attorney's fees on PlainsCapital's counterclaim for damages resulting from Martin's default under residential construction loan documents. In three issues, Martin contends the trial court erred in rendering judgment in favor of PlainsCapital because PlainsCapital was limited to a claim for a deficiency under section 51.003 of the Texas

---

[1] The Honorable Martin E. Richter, retired Justice, sitting by assignment.

Property Code; the evidence is legally and factually insufficient to support the award of $332,927.27; and the trial court erred in awarding attorney's fees because PlainsCapital was not entitled to judgment on its counterclaim. We reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

The parties stipulated to the following facts: on September 15, 2006, Martin and PlainsCapital entered into a construction loan agreement. In connection with the agreement, Martin signed a note in the original amount of $790,400. PlainsCapital is the legal owner and holder of the note. Martin's obligations under the note were secured by a deed of trust, security agreement, and financing statement executed on September 15, 2006. The deed of trust gave PlainsCapital a secured interest in Martin's real estate and improvements in the City of McKinney. On September 15, 2007, Martin and PlainsCapital entered into a loan modification agreement extending the maturity date of the note to March 15, 2008. Martin defaulted on the note and deed of trust by failing to timely pay the amounts owed under the terms of the note. PlainsCapital sent a demand letter to Martin on April 28, 2008, and a notice of foreclosure on May 9, 2008. Martin failed to cure his default, and the property was sold at public auction on June 3, 2008. PlainsCapital purchased the property at the public auction for $539,000. Immediately prior to the foreclosure sale, Martin owed $770,757.45 in outstanding principal, $15,791.02 in interest, and $2705.52 in attorney's fees incurred to foreclose on the property.

Martin sued PlainsCapital in June 2008, alleging causes of action for fraud, monies had and received, and wrongful foreclosure; he also sought the imposition of a constructive trust on the underlying property. PlainsCapital answered and asserted a counterclaim seeking damages for breach of the underlying note, construction loan agreement, and deed of trust. Martin later dismissed his claims pursuant to an agreed order, and the case was tried to the court on

PlainsCapital's counterclaim.

The focus of the trial was the fair market value of the property. Martin introduced the testimony and appraisal of Kyle Hollowell, a state-certified residential real estate appraiser with more than eighteen years' experience, who had performed an appraisal for PlainsCapital on June 10, 2008, seven days after the June 3 foreclosure. Hollowell testified the property had a fair market value of $825,000 and his opinion would be the same for both June 3 and June 10. Cheryl Massey, a state-certified real estate appraiser with twenty years' experience, testified she reviewed Hollowell's appraisal, the $825,000 fair market value was "adequately supported," it was a "good appraisal," and she found no reason to disagree with Hollowell's conclusion. She agreed with Hollowell that the assessment required an evaluation of exposure time and anticipated marketing time. She also testified that the $825,000 value included built-in holding costs, costs of sale, and time value of money, but later said the value was only the sales price. Additionally, Martin testified to his belief as the owner of the property that the fair market value on the date of foreclosure was $850,000.

PlainsCapital introduced the testimony of Doug Cook, the president of PlainsCapital's North Dallas branch. Cook testified regarding the residential broker opinion PlainsCapital requested from Rik Massengale. The opinion was admitted as an exhibit and estimated the property would sell for $770,000. In determining the amount of its bid at foreclosure, $539,000, PlainsCapital bid seventy percent of Massengale's estimate because the "bank's history with the foreclosed properties seems to imply what we're going to end up with." Cook testified PlainsCapital was prepared to bid more for the property than the initial $539,000 bid, but no one bid more for the property. Cook testified PlainsCapital was prepared to bid "$20,000 short of" $807,000. Following the foreclosure sale, PlainsCapital listed the property for sale. On

September 15, 2009, more than a year and three months after the date of foreclosure, the property sold for $599,000.

PlainsCapital calculated its damages for breach of the loan documents based, in part, on the actual sales price of $599,000 over a year after foreclosure, arguing section 51.003 of the property code regarding suits for deficiencies applied only when the deficiency was based on the foreclosure price. It asserted that, "in situations where a lender estimates it's [sic] damages based on the amount bid at the foreclosure sale, 51.003 [of the property code] applies," and "that's not what we have here"; it claimed it was "seeking its actual damages." PlainsCapital argued it was "giving a credit to Mr. Martin for every penny they received on the sale of the property . . . in September of 2009," when the property sold for $599,000 and all it was trying to do was "be made whole."

In contrast, Martin argued PlainsCapital conducted a foreclosure sale under section 51.002 of the property code and, therefore, section 51.003 applied to PlainsCapital's attempt to recover the deficiency. PlainsCapital does not dispute that its foreclosure was pursuant to property code section 51.002 regarding nonjudicial foreclosure sales.

The trial court determined section 51.003 was inapplicable and rendered judgment awarding PlainsCapital $332,927.27 in damages and $127,558.24 in attorney's fees. The trial court filed findings of fact and conclusions of law detailing the basis for its damage award. Those included the court's conclusion that section 51.003 did not apply in this case and that Martin was entitled to a credit of $599,000 for the "Sale Price of Property."

In his first issue, Martin contends the trial court erred in rendering judgment in favor of PlainsCapital because PlainsCapital was limited to a claim for deficiency under section 51.003. Specifically, Martin argues the only evidence of the fair market value of the property on the date of

foreclosure was $825,000, which exceeded the amount of the secured debt and resulted in no deficiency. In his second issue, Martin asserts the evidence is legally and factually insufficient to support judgment in the amount of $332,927.27.

## Application of Section 51.003

We first address as an issue of first impression the applicability of section 51.003 when the noteholder sues for a deficiency based on the actual resale price of foreclosed property rather than the foreclosure sale price. Statutory construction is a question of law that we review under a de novo standard of review. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006) (citing *In re Forlenza*, 140 S.W.3d 373, 376 (Tex. 2004)). When construing a statute, we begin with its language. *Id.* Our primary objective is to determine the Legislature's intent which, when possible, we discern from the plain meaning of the words chosen. *Id.* (citing *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003)). If the statute is clear and unambiguous, we must apply its words according to their common meaning without resort to rules of construction or extrinsic aids. *Id.* (citing *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865-66 (Tex. 1999)). If necessary, we may consider other matters in determining legislative intent, including the objective of the law, its history, and the consequences of a particular construction. *City of Marshall v. City of Uncertain*, 206 S.W.3d 97, 105 (Tex. 2006).

Section 51.003 provides:

(a) If the price at which real property is sold at a foreclosure sale under Section 51.002 is less than the unpaid balance of the indebtedness secured by the real property, resulting in a deficiency, any action brought to recover the deficiency must be brought within two years of the foreclosure sale and is governed by this section.

(b) Any person against whom such a recovery is sought by motion may request that the court in which the action is pending determine the fair market value of the real property as of the date of the foreclosure sale. The fair market value shall be determined by the finder of fact after the introduction by the parties of competent

−5−

evidence of the value. Competent evidence of value may include, but is not limited to, the following: (1) expert opinion testimony; (2) comparable sales; (3) anticipated marketing time and holding costs; (4) cost of sale; and (5) the necessity and amount of any discount to be applied to the future sales price or the cashflow generated by the property to arrive at a current fair market value.

(c) If the court determines that the fair market value is greater than the sale price of the real property at the foreclosure sale, the persons against whom recovery of the deficiency is sought are entitled to an offset against the deficiency in the amount by which the fair market value, less the amount of any claim, indebtedness, or obligation of any kind that is secured by a lien or encumbrance on the real property that was not extinguished by the foreclosure, exceeds the sale price.

TEX. PROP. CODE ANN. § 51.003 (West 2007).

Martin argues, and PlainsCapital does not contest, that property code section 51.002 applies to the nonjudicial foreclosure elected by PlainsCapital. It follows, according to Martin, that PlainsCapital's damage claim for a deficiency is governed by section 51.003. Martin relies on the language of subsection 51.003(a) providing that "[i]f the price at which real property is sold at a foreclosure sale *under section 51.002* is less than the unpaid balance of the indebtedness secured by the real property, resulting in a deficiency, any action brought to recover the deficiency must be brought within two years of the foreclosure sale and *is governed by this section*." (Emphasis added). Without argument or authority, PlainsCapital dismisses Martin's claim in one sentence, stating that "where, as here, a lender does not base its deficiency under a promissory note on the foreclosure sales price," section 51.003 does not govern. It then assumes the applicability of section 51.003 and argues the trial court's judgment must be affirmed because the fair market value was less than the foreclosure bid of $539,000. We conclude the issue of section 51.003's applicability is relevant to our disposition of this appeal and therefore turn to the legal

principles we apply in determining the legislature's intent.

The express language of subsection 51.003(a) suggests at least two things: a nonjudicial foreclosure has occurred and the sale price at foreclosure was less than the debt. Additionally, an action must have been brought to recover "the deficiency." Deficiency is not specifically defined in chapter 51 of the property code. Read generally, a deficiency would be the amount owing on a debt after application of the collateral's value regardless of whether the value was determined based on the foreclosure price or the fair market value of the property on the date of the foreclosure. *See generally Smith v. Town N. Bank*, No. 05-11-00520-CV, 2012 WL 5499406, at *2 (Tex. App.—Dallas Nov. 13, 2012, pet. filed) (mem. op.) (noting the borrower requested the trial court "to determine the alleged deficiency on the basis of the fair market value of the properties rather than the sales prices paid at the foreclosures"). PlainsCapital's president Cook in fact testified that the company proceeded with the lawsuit "because of the amount of deficiency."

Reading the subsection 51.003(a) language strictly, the word "deficiency" appears to be the difference between the debt and the foreclosure price. *See generally Branch Banking & Trust Co. v. TCI Luna Ventures, LLC*, No. 05-12-00653-CV, 2013 Tex. App. LEXIS 1745, at *14-15 (Tex. App.—Dallas Feb. 21, 2013, no pet. h.); *Bass Drum Invs., Inc. v. First Nat'l Bank*, Nos. 13-10-00602-CV, 13-10-00603-CV, 2012 WL 3133875, at *2 (Tex. App.—Corpus Christi Aug. 2, 2012, no pet.) (mem. op.) (noting that, "[f]or a deficiency to exist, the price at which the real property is sold at a foreclosure sale must be less than the unpaid balance of the indebtedness secured by the real property"). Under that interpretation, PlainsCapital would be correct that it did not bring an action for "that" deficiency. PlainsCapital's interpretation in the context presented by this appeal leaves questions, including the one posed by Martin: Whether a mortgagee can elect a nonjudicial foreclosure under section 51.002 and then "opt in" or "opt out" of

section 51.003 by suing for a deficiency based on an amount different from the foreclosure price. Because we cannot construe a word or sentence in isolation, we must consider the language of the entire statute and, if necessary, we may consider matters such as the objective of the statute, its history, and the consequences of a particular construction. *City of Marshall*, 206 S.W.3d at 105.

Chapter 51 of the Texas Property Code is titled "Provisions Generally Applicable to Liens" and governs nonjudicial foreclosures (section 51.002); deficiency judgments following nonjudicial foreclosures (section 51.003); deficiencies after judicial foreclosures (section 51.004); and rights of offset by guarantors, as judgment-debtors, for subsequent judicial or nonjudicial foreclosures (section 51.005). Chapter 51 also contains various provisions regarding trustees, nonjudicial foreclosures affected by deeds in lieu of foreclosure, governmental liens, and the "as is" status of purchasers at nonjudicial foreclosures under section 51.002 (sections 51.006-.009). These provisions do not address expressly a situation in which a mortgagee seeks a deficiency based on an amount other than the foreclosure price.

The Legislature enacted sections 51.003 and 51.005 in 1991 with the purpose of protecting borrowers and guarantors in deficiency suits arising from nonjudicial foreclosures on realty. *See Long v. NCNB-Tex. Nat'l Bank*, 882 S.W.2d 861, 865-66 (Tex. App.—Corpus Christi 1994, no writ). The enumerated provisions in chapter 51 address nonjudicial and judicial foreclosures, as well as deeds in lieu of foreclosure. Section 51.003 did not create a right to sue for a deficiency; "it merely regulates a right that apparently existed at common law." *Trunkhill Capital, Inc. v. Jansma*, 905 S.W.2d 464, 468 (Tex. App.—Waco 1995, writ denied) (citing *Langever v. Miller*, 76 S.W.2d 1025, 1027 (Tex. 1934)). That regulation includes providing borrowers and guarantors protection in deficiency suits by allowing offsets when the fair market value of the property on the date of foreclosure exceeds the foreclosure sales price. *See* TEX. PROP. CODE ANN. §§

51.003(c), 51.004(c), 51.005(c). In that scheme, the property code does not provide lenders the choice of seeking a deficiency judgment based on the foreclosure price or reselling the property and seeking a deficiency judgment based on the resale price. Specifically, a lender is not given the option of electing a nonjudicial foreclosure sale under section 51.002 and then opting out of section 51.003 governing the borrower's right to a determination, and offset, based on the fair market value on the foreclosure date. *Id.* § 51.003(a).

PlainsCapital cites no authority and makes no argument supporting its claim it has the option of invoking the provisions of section 51.002 and ignoring the provisions of section 51.003. Instead, it dismisses Martin's issue and relies on its analysis of the fair market value of the property. To accept PlainsCapital's strict reading of section 51.003 disregards the express language of the chapter 51 sections providing offsets for the fair market value of foreclosed property and negates the legislative intent of protecting borrowers by allowing them offsets for the fair market values of their foreclosed properties. That same strict reading of section 51.003 would provide a carve-out for lenders to avoid the protections expressly provided to borrowers and guarantors and creates consequences never intended or contemplated. *See City of Marshall*, 206 S.W.3d at 105 (noting court may consider consequences of a particular statutory construction in determining legislative intent). Such an interpretation would also render meaningless the provisions of section 51.003 because a lender could avoid the statute by conducting another sale immediately following foreclosure. PlainsCapital does not defend its construction of section 51.003, and we conclude the trial court erred as a matter of law in determining section 51.003 did not apply to PlainsCapital's deficiency suit against Martin. We therefore sustain Martin's first issue on that basis.

**Sufficiency of Evidence Regarding Fair Market Value**

We address together the remainder of Martin's first issue (that the fair market value of the property exceeded the debt on the date of foreclosure) and his second issue (regarding the legal and factual sufficiency of the evidence to support the $332,927 in damages award) because resolution of these issues involves an evidentiary review. Part of that analysis includes PlainsCapital's response to issue one that the property's fair market value renders application of section 51.003 irrelevant based on its analysis of the evidence and requirements for determining fair market value.

Section 51.003 is an affirmative defense because the borrower is seeking an offset. *Interstate 35/Chisam Rd., L.P. v. Moayedi*, 377 S.W.3d 791, 799 (Tex. App.—Dallas 2012, pet. filed); *Cabot Capital Corp. v. USDR, Inc.*, 346 S.W.3d 634, 639 (Tex. App.—El Paso 2009, pet. denied). Thus, Martin bore the burden to prove this defense.

Martin, as the party challenging the legal sufficiency of the evidence on a matter for which he bore the burden of proof, must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). Also, as the party attacking the factual sufficiency of an adverse finding on an issue for which he had the burden of proof, he must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *Id.* at 242. For factual sufficiency, we consider and weigh all of the evidence, and we will set aside a verdict on the issue only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.* If Martin offered no credible evidence on the issue, we must overrule his challenges to the sufficiency of the evidence supporting the verdict against him. *Id.*

We first consider the legal sufficiency of the evidence to support the trial court's award of

$332,927.27 in damages.  That amount is based on the actual sales price of the property of $599,000 when it was sold more than a year after the foreclosure sale.  We therefore must determine whether any evidence supports that amount as the fair market value of the property on the date of foreclosure, June 3, 2008.

"Fair market value" is not defined in chapter 51, although subsection 51.003(b) provides that "[c]ompetent evidence of value may include, but is not limited to," expert opinion testimony, comparable sales, anticipated marketing time and holding costs, cost of sale, and the necessity and amount of any discount to be applied to the future sales price or cashflow generated by the property.    TEX. PROP. CODE ANN. § 51.003(b).   The historical definition of fair market value, which has been applied to section 51.003 claims, is the price the property will bring when offered for sale by one who desires to sell, but is not obliged to sell, and is bought by one who desires to buy, but is under no necessity of buying.   *See Cabot Capital Corp.*, 346 S.W.3d at 639 (applying definition in section 51.003 suit) (citing *City of Pearland v. Alexander*, 483 S.W.2d 244, 247 (Tex. 1972)); *see also Preston Reserve, L.L.C. v. Compass Bank*, 373 S.W.3d 652, 658 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Exxon Corp. v. Middleton*, 613 S.W.2d 240, 246 (Tex. 1981)).

Evidence of what property sells for at foreclosure is not competent evidence of its fair market value because the transaction is not between a willing seller and a willing buyer.   *Preston Reserve*, 373 S.W.3d at 663 (citing *SPT Fed. Credit Union v. Big H Auto Auction, Inc.*, 761 S.W.2d 800, 801-02 (Tex. App.—Houston [1st Dist.] 1988, no writ)).   Nor is the actual sale price of property competent evidence of the fair market value when circumstances indicate that the sale is out of the ordinary in some way.   *Id.* (citing *SPT*, 761 S.W.2d at 801).   For example, in *Preston Reserve*, the court concluded the sale price of property a year after foreclosure was not competent

evidence of the fair market value for purposes of applying section 51.003 because there was no evidence regarding whether the market conditions were comparable to the conditions at the time of the foreclosure sale, which was the relevant date for determining whether the fair market value exceeded the debt on the date of foreclosure. *Id.* at 663, 669; *see also Moore v. Bank Midwest N.A.*, 39 S.W.3d 395, 400 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (noting fair market value of property under section 51.003 must be determined as of date of foreclosure).

The trial court's calculation of $332,927.27 in actual damages did not include a determination of fair market value. Rather, the trial court deducted the 2009 actual sale price of $599,000 from the debt. The trial court did, however, make a finding that, even if section 51.003 applied, the fair market value was $477,715.65, which it computed by taking the $599,000 sale price and deducting holding costs and costs of sale. The trial court did not tie that amount to the date of foreclosure and made no finding regarding fair market value on the foreclosure date. The record also contains no evidence linking the resale amount of $599,000 to the fair market value of the property on the date of foreclosure.

Significantly, PlainsCapital does not argue $599,000 was the fair market value of the property on the date of foreclosure—instead, it argues section 51.003 contains a different formula for determining fair market value based on the reseller's future sales price. It relies on subsection 51.003(b)'s non-exclusive list of "competent evidence of value" described above. *See* TEX. PROP. CODE ANN. § 51.003(b) (West 2007). We conclude PlainsCapital's construction of these factors to establish a different definition of fair market value is contrary to the express wording of subsection 51.003(b), which requires the calculation of fair market value as of the date of foreclosure and provides only a non-exclusive list that a fact finder "may" consider in determining fair market value. *Id.* Such a construction is also contrary to the analysis applied by other courts

addressing competent evidence of fair market value under section 51.003. *See, e.g.*, *Preston Reserve*, 373 S.W.3d at 663; *Cabot Capital Corp.*, 346 S.W.3d at 639*; Moore*, 39 S.W.3d at 400.

For the reasons stated, we sustain Martin's second issue in which he argues the evidence is legally insufficient to support the trial court's judgment awarding PlainsCapital $332,927.27 in damages based on the $599,000 sale that took place more than a year after the date of foreclosure.

As part of his first issue, Martin contends the trial court should have rendered a take-nothing judgment in his favor because the only evidence of fair market value for the foreclosed property was $825,000, which exceeded the debt. We can render judgment for Martin only if there is no evidence to support the deficiency amount awarded and the evidence conclusively establishes there was no deficiency. *Preston Reserve*, 373 S.W.3d at 669. Evidence regarding the property's fair market value as of the date of foreclosure included Hollowell's and Massey's testimony supporting the $825,000 appraisal and Martin's testimony of $850,000. The evidence also included some evidence regarding PlainsCapital's real estate estimates and the Massengale broker's opinion. The evidence was challenged and is not conclusive. Accordingly, a remand is necessary to allow the trial court, as fact finder, to resolve the fact issues. Those issues also include whether holding costs and sales expenses are included as part of the fair market value.

Based on our resolution of Martin's first and second issues, we do not reach his third issue regarding the award of attorney's fees. Because it is not clear whether PlainsCapital will ultimately prevail on its claim against Martin—only that the judgment awarding damages in the amount of $332,927.27 is erroneous—we leave the issue and amount of attorney's fees for the trial court's determination on remand.

We reverse the trial court's judgment and remand for further proceedings consistent with

this opinion.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

100235F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

WILLIAM MARTIN, Appellant

No. 05-10-00235-CV      V.

PLAINSCAPITAL BANK, Appellee

On Appeal from the 429th Judicial District Court, Collin County, Texas
Trial Court Cause No. 429-01773-2008.
Opinion delivered by Justice Bridges.
Justices Murphy and Richter participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** for further proceedings consistent with this opinion.

It is **ORDERED** that appellant WILLIAM MARTIN recover his costs of this appeal from appellee PLAINSCAPITAL BANK.

Judgment entered March 28, 2013.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE