**GINTHER–DAVIS CENTER, LTD., et al., Appellants,**

v.

**HOUSTON NATIONAL BANK et al., Appellees.**

No. 17676.

Court of Civil Appeals of Texas, Houston (1st Dist.).

April 17, 1980.

Rehearing Denied May 5, 1980.

Able & Coleman, P. C., Tom F. Coleman, Jr., Houston, for appellants.

Hirsch, Westheimer, Block & Wilk, Michael S. Wilk, David Z. Chesnoff, Houston, for appellees.

Before PEDEN, EVANS and WARREN, JJ.

PEDEN, Justice.

Mr. Fergus Ginther and Mr. Don Davis, owners and mortgagors of a 14.4009 acre tract improved with apartments, appeal from the denial of a temporary injunction sought to prevent a mortgage foreclosure sale of the property by Houston National Bank. On September 30, 1977, the appellants had executed a $5,000,000 note and deed of trust evidencing a loan by the bank in that amount to refinance an existing obligation. The note was, initially, due on September 30, 1982, but on June 5, 1979, the parties negotiated a new loan for $500,000, executed a note and deed of trust to secure its payment, executed an agreement stating that the appellants were in default on the $5,000,000 note, and advanced its maturity date to December 1, 1979.

The appellants' points of error are that the trial court abused its discretion in denying their request for a temporary injunction because they showed (1) that the bank wrongfully prevented them from timely satisfying their obligation to it and (2) that the obligations on which foreclosure was sought were not due and payable because

the June 5, 1979, deed of trust was procured by duress and fraud and the $5,000,000 note was not in default when foreclosure was threatened. We affirm.

The $5,000,000 note executed on September 30, 1977, bore interest at the rate of 9¾ percent per annum, payable quarterly beginning November 1, 1977. It expressly provided that failure to pay any installment of principal or interest when due or failure to perform any of the agreements contained in the accompanying deed of trust would give the holder of the note the option to accelerate the maturity and institute foreclosure proceedings. The makers expressly waived notice, protest, and presentment. Payment of the note was secured by a deed of trust that granted to the trustee a power of sale in the event of default; it also provided that upon default the holder of the note had the right to take possession of the apartment complex, manage it, and apply the net rental profits to satisfaction of the debt. Appellants also executed a collateral assignment of the lease in favor of the bank as additional security in the event of default.

The fourth document executed on September 30, 1977, was a loan agreement between appellants and the bank. It provided that notwithstanding the 9¾ per cent interest rate specified in the promissory note, appellants agreed to pay interest at a specified variable rate which was dependent on the prime rate charged by the bank to its responsible commercial and industrial borrowers. The purpose of the $5,000,000 loan was stated to be for financing or refinancing of improved property. The agreement required appellants to make certain prepayments of interest at the beginning of each loan year, the amount of the prepayments to be determined by the bank by estimating the amount by which the accrued interest for that year would exceed the cash flow to be generated from operation of the property.

The appellants made the required prepayment of interest for the loan year 1977–1978, and there is no evidence that they failed to pay all of the interest due that year. The testimony regarding pre-payment of interest for the second year, however, is disputed. When asked if the advance payment was made, appellant Fergus Ginther replied "Yes, sir. Presumably." He stated that a bank officer had informed him that the appellants had on deposit with the bank $87,000 in "excess monies," but he did not know whether an interest pre-payment deposit was actually made. William J. Barton, the development manager of the apartment project, and James R. Franer, a bank officer, testified that no prepaid interest deposit was made for the second loan year.

The interest payments due November 1, 1978, and February 1, 1979, were not made until December 29, 1978, and April 4, 1979, respectively, but there is no evidence that the bank took steps to accelerate the note or foreclose on the property. Appellants made no direct payment of the interest installment due on May 1, 1979. In late April and early May of 1979, appellants met several times with officers from the bank. Mr. Franer testified that the appellants were told that the bank expected the May payment to be made and that if it was not made the bank would institute legal proceedings. Mr. Robert Waters, appellants' attorney at that time, was present at some of the meetings. He testified that the bank officers advised the appellants that legal action would ensue if the note was not brought current.

On May 21, 1979, the bank exercised its right to take possession of the property. The tenants were directed to pay rent directly to the bank.

As we have noted, the appellants executed a second series of documents on June 5. One of these was a reinstatement and extension agreement which modified the original note. The agreement first stated that appellants were in default and that the original note had been accelerated. It went on to modify the prior arrangement, changing the maturity date of the loan to December 1, 1979, and requiring monthly interest payments.

Appellants also executed a promissory note for $500,000 payable to the bank with interest at the rate of 10½ per cent per annum payable in monthly installments. The principal of the loan was to be furnished to appellants in a series of advances as provided in an accompanying supplemental loan agreement. All sums of principal so advanced were due and payable on or before December 1, 1979. Failure to pay any installment of either the $5,000,000 note as modified or the $500,000 note or failure to perform any of the covenants expressed in any of the documents securing either note constituted default and gave the holder the right to accelerate maturity. In addition, the note contained a provision whereby the appellants waived notice of default, election to accelerate maturity, demand, presentment, and protest. The second note was secured by a second deed of trust covering essentially the same property as the first, and it also granted to the trustee the power of sale.

Appellants also executed a supplemental loan agreement, which specified the terms and purposes of the advances of principal. First, $285,781.68 was to be advanced for the purchase of an outstanding personal note of Fergus Ginther, payment of the due and unpaid interest on the $5,000,000 note, and reimbursement for the bank's expenses in enforcing its rights. Future advances of principal were to be made to pay the interest accruing on both the $5,000,000 and $500,000 notes that would not be covered by the net rentals collected by the bank from the apartment tenants. The loan agreement also specified the conditions which would result in default on the $500,000 loan. These included failure to make any payment on either the $5,000,000 or the $500,000 note, failure to perform any covenant in any of the documents securing or pertaining to either note, the occurrence or discovery of any event or condition which would adversely affect timely payment, and a good faith belief by the bank that the prospect of timely payment was impaired. Upon default, the bank was given the option to accelerate both notes without notice to the appellants.

The apparent purpose of the new arrangement as set up in the June 5 documents was to give the appellants time to find a buyer for the property so they could realize enough from the sale to pay off the interest and principal on both notes. They allege that they were able to find at least one prospective buyer—Mr. Noble Ginther, Sr., Fergus Ginther's father—but that the bank interfered with and prevented the sale by refusing to provide certain financial information about the property.

Appellants made no further direct payments of interest on either note after June 5, 1979. It is their position that the remaining $214,218.32 available for advances from the $500,000 note, plus the net rental profits (which they estimate at some $35,000 per month, the amount they said they realized before the bank took over management), plus the funds they had on deposit with the bank in various checking accounts provided enough money to meet the monthly interest payments on both notes. The bank contends, however, that the notes are in default.

A series of meetings between appellants and bank officers took place from July through November of 1979. The bank officers informed appellants in early November that interest was past due, demanded that it be paid, and indicated that the bank would accelerate the notes and proceed with foreclosure if the notes were not brought current. The bank then sent appellants two letters dated November 14, 1979, informing them that the interest payments on both notes were in default, that the bank was "hereby" accelerating maturity of the notes, and that unless immediate payment was made, the property was to be posted for foreclosure sale. By letters dated December 5, 1979, the bank notified appellants of a proposed trustee's sale to be held on January 1, 1980, enclosing with the letters copies of the notices of sale.

On December 26, appellants filed an application for a temporary restraining order and requested a hearing on a temporary injunction. The district court granted ap-

pellants a temporary restraining order and set a hearing on the temporary injunction for January 21, 1980.

By two letters dated January 11, 1980, the bank notified appellants of a proposed trustee's sale to be held on February 5, 1980.

The hearing on appellants' application for temporary injunction was held on January 28 and 29, and on January 30 the trial judge signed an order denying the injunction and the application for appointment of an auditor which appellants had filed on January 29. Appellants then gave notice of appeal and filed a transcript with this court. On February 4, 1980, appellants obtained from this court a temporary injunction pending disposition of the appeal.

■ The appellants argue under their first point of error that the bank interfered with potential contracts which they were negotiating for the sale of the property, thereby preventing them from obtaining enough cash to pay off the notes. This assertion is based on the testimony of Mr. Noble Ginther, Fergus Ginther's father, that he was considering buying the property but that he decided not to do so because of the bank's hostility toward the appellants and its failure to furnish him with sufficient information. Appellants contend that the bank's conduct is grounds for enjoining the foreclosure sale until such time as the bank provides sufficient information to allow a purchaser to evaluate the property and decide on the terms on which he would be willing to purchase it. Even if true, however, such actions by the bank would not give appellants an automatic right to an injunction. See *Cox v. Guaranty National Bank*, 565 S.W.2d 565 (Tex.Civ.App.1978, no writ); *Floore v. Morgan*, 175 S.W. 737 (Tex. Civ.App.1915, no writ).

Appellants rely on *Ward v. Scarborough*, 236 S.W.2d 434 (Tex.Com.App.1922), in which the mortgagors sued for recovery of their land, alleging that the defendants had prevented them from selling it in time to avoid default. Although the plaintiffs in that case were held to have a constructive trust on the property, the suit was not for

an injunction and does not support appellants' argument that it was an abuse of discretion for the trial court in this case to deny an injunction. Under the facts presented in this case, it does not appear that the trial court abused its discretion. As the appellees point out, the evidence on this point was disputed. Although Mr. Ginther did state that the bank's failure to provide information was a reason he decided not to go through with the deal, it does not necessarily follow that the bank acted wrongfully.

First, there was testimony that computer printouts and management reports supplying the necessary information were delivered to the appellants and to Mr. Ginther. In addition, since appellants managed the property from 1977 until May 21, 1979, they presumably had their own accounting records covering that period of time. Finally, appellants introduced into evidence a contract dated December 13, 1979, for the sale of the property to third parties. Although the contract was admitted for the limited purpose of showing the amount that would be lost by the appellants if the foreclosure were to be completed, its existence gives rise to the inference that a prospective purchaser had sufficient information to enter into a contract with the appellants. Thus there was evidence from which the trial court could have concluded that appellants failed to prove wrongful interference by the bank.

■ Appellees make the additional arguments that appellants have failed to prove that there was a valid contract between appellants and Mr. Ginther which would have been interfered with and that the proper remedy for interference with contractual relations is the recovery of damages. However, appellants are not trying to establish a cause of action for interference with contractual relations but rather are attempting to show only that the bank wrongfully prevented them from selling the property. This contention, if substantiated and accepted by the trial court, could support the imposition of equitable relief. *Ward v. Scarborough*, supra. Thus,

the reason for overruling appellants' point of error one is that the evidence was sufficient to entitle the trial court to conclude that there had been no wrongful interference with sale.

Appellants contend that the $5,000,000 note is not mature and is not in default, because the reinstatement and extension agreement which changes the maturity date from 1982 to 1979 is invalid, so the principal of the note is not yet due and payable. Appellants maintain that their execution of the set of documents on June 5, 1979, was induced by fraud and duress. They testified that they signed the documents only because the bank threatened to foreclose on the property that day if they did not. They argue that the foreclosure would have been illegal and that consequently the fraud and improper threat which induced their signatures render the documents void.

■ In support of their claim of fraud, the appellants cite testimony of John Hamstra, a bank officer. Mr. Hamstra testified that on May 3, 1979, Fergus Ginther brought $135,000 in cash to the bank, and that he (Mr. Hamstra) required that the money be applied to pay off a personal unsecured debt of Mr. Ginther's rather than to pay the interest on the secured notes. The following colloquy was then had between Mr. Hamstra and appellants' counsel:

Q: You did that with the understanding with him that you would wait for your interest of the other till he had the money or could make other arrangements?

A: I don't believe we agreed that. We agreed we would work towards the consummation of the deal and get it reworked if necessary.

Q: In order to secure the money on this $135,000 on the unsecured note, you had some kind of agreement you would work towards the consummation on the deal on the second note?

A: We would attempt to; that's correct.

Q: That is the reason he was willing to apply the money on the secured note to satisfy the obligation?

A: I can't know that was the reason.

Q: That's the deal you and he had?

A: I don't believe we had a deal. I told him we wanted the unsecured note paid. I don't think I told him we had a deal one way or the other. We have always had the attitude we would work toward the solution of the problem.

Q: That money at that time could have been applied to reduce the secured note had Mr. Ginther not had some kind of arrangement with you that would induce him to put it on the unsecured note?

A: I don't believe it would have been a principal reduction.

Appellants contend that the bank's conduct constituted fraud in that Mr. Hamstra falsely represented that a deal could be worked out, thereby inducing Mr. Ginther to apply the money to the unsecured debt, when in fact no deal was made and the bank shortly thereafter accelerated the note and posted the property for sale on June 5.

We think it clear that Mr. Hamstra only said he would work toward the solution of the problem, not that a solution would be reached.

Even if we were to assume that the bank's conduct rises to the level of fraud, it seems clear that the trial court could have determined that the appellants had waived any right to assert such fraud as a means of invalidating the June agreements. At the time they signed the documents they obviously knew that the bank had decided to foreclose on the property. Thus, if there had been any agreement or deal, appellants clearly were aware that the bank had chosen not to abide by it. Yet appellants signed the documents and accepted the benefits that these conferred upon them. Under the circumstances, appellants must be held to have ratified the contracts and waived any defense of fraud. *Daniel v. Goesl*, 161 Tex. 490, 341 S.W.2d 892 (1961); *Rosenbaum v. Texas Building & Mortgage Co.*, 140 Tex. 325, 167 S.W.2d 506 (1943).

In support of their claim of duress, appellants assert that the threatened foreclosure on June 5 which induced them to sign was illegal because there had been no notice of intention to accelerate the note and because the interest at that time was not in default. However, there was ample evidence from which the trial court was entitled to conclude that appellants had received notice of the bank's intention to accelerate the $5,000,000 note at the meetings appellants held with the bank officers in late April and May. Moreover, the bank introduced into evidence a letter dated May 9, 1979, from Mr. Franer to the appellants. The letter contains the following paragraphs:

Uncured default exists in payment of the quarterly installments of interest due on the Note in that the interest installment due on May 1, 1979 has not been paid. Accordingly, because of such default and other defaults, Houston National Bank hereby accelerates the maturity of the Note and the same is hereby declared due and payable at once and demand is hereby made for immediate payment thereof, amounting to $5,000,000.00 principal, plus interest through the close of the business day of May 7, 1979 in the amount of $188,698.63 plus $1,986.30 interest per day thereafter, until the obligation is fully paid.

Unless payment as demanded above is made immediately, the property covered by the Deed of Trust will be posted for foreclosure sale in accordance with the terms and provisions of the Deed of Trusts.

The bank also introduced into evidence a letter to appellants from Mr. Franer dated May 14, 1979, along with receipts for certified mail dated May 15 and returns. That letter informed appellants of the proposed trustee's sale to be held on June 5 and enclosed a copy of the notice of sale which was also dated May 14, 1979. Appellant Don Davis testified that he did not recall receiving any notice of intent to accelerate the $5,000,000 note prior to June 5. Mr. Barton, appellants' manager, also testified that he was not aware that the company had received any such notice at that time. However, Mr. Barton did state that appellants had received a letter from the bank in early May which notified them that the loan had been accelerated.

As noted above, appellants also contend that foreclosure on June 5 would have been improper because the note was not then in default. They maintain that the bank had their funds on deposit which, added to prepaid interest, exceeded the amount of interest due. Mr. Ginther testified that on June 5, 1979, appellants had $87,000 in prepaid interest on deposit with the bank. He also stated that at the time the bank took over management of the property appellants had about $100,000 in their account. However, as was discussed above, there was ample evidence from which the trial court was entitled to conclude that there was no prepaid interest for the second loan year. Further, the bank officers testified unequivocally that the loan was in fact in default after May 1, 1979. Mr. Hamstra also pointed out that in early May, when Mr. Ginther deposited the $135,000 mentioned earlier to cover an outstanding personal debt, he had also an additional $100,000 obligation that was due and payable. Finally if interest payments on the $5,000,000 note were in fact current as of May or June, 1979, it is difficult to understand why the appellants have never complained of the $184,954.23 which was applied from the advances on the $500,000 note to payment of "unpaid interest due on the $5,000,000.00 Note to June 5, 1979."

We find that there was sufficient evidence to establish that the bank gave appellants proper notice of intent to accelerate the loan, that the $5,000,000 note was in default, and therefore, that the bank was legally entitled to proceed with the foreclosure sale on June 5, 1979. Further, we find that the bank's threat to foreclose was not duress, and the June 5 agreements are valid. *Ulmer v. Ulmer*, 139 Tex. 326, 162 S.W.2d 944 (1942); *Tower Contracting Co., Inc. of Texas v. Burden Brothers, Inc.*, 482 S.W.2d 330 (Tex.Civ.App.1972, writ ref. n. r. e.); *Riggs v. Bartlett*, 310 S.W.2d 690 (Tex. Civ.App.1957, writ ref. n. r. e.).

■ Since the reinstatement and extension agreement was valid, the $5,000,000 note matured on December 1, 1979. Appellants admitted at the hearing that they had not paid the principal on that note and that they lacked the funds to do so. Therefore, their argument that the note is not mature and is not in default cannot stand.

Appellants maintain that the notes were not in default in May or December, 1979, but that they are unable to prove this vital fact because the bank refuses to provide them with a proper accounting. They contend that the net rental profits and the advances on the $500,000 note should have provided enough to cover all interest due between June 5 and December 1, 1979.[1] However, if the June agreements were valid, then the principal on both notes was due on December 1. Since appellants admit that they have not paid and cannot pay the principal amounts owed, the notes would be in default regardless of whether the interest was kept current from June to December. Therefore, the relevant question as regards the accounting is whether the interest payments on the $5,000,000 note were in fact in default in May of 1979, when the bank threatened foreclosure. As noted earlier, we find that there was enough evidence for the trial court to conclude that there was such a default.

■ In any event, the loan transaction records introduced by the bank reflect that the proceeds of the $500,000 note were advanced to appellants except for an advance of $16,639.27 which we are unable to trace. Without those advances the apartment rentals (using the highest figures estimated by appellants) would not have sufficed to keep the interest current on the $5,000,000 note. Although appellants now seek to repudiate the June agreements, they have not tendered the $500,000 benefit they received as a result of the June transactions. This was a factor the trial judge was entitled to consider, a factor which weighed against the appellants in determining whether equitable relief was appropriate.

■ Although an accounting may ultimately become necessary in order to determine the exact amount appellants owe to the bank, under the circumstances we cannot say the trial court abused its discretion in denying appellants' request for a temporary injunction on the grounds that the notes were not in default. See, generally, 39 Tex.Jur.2d Rev., Mortgages and Trust Deeds § 136, and cases cited therein. It is true that appellants' alleged difficulties in obtaining information from the bank was a factor which the trial court could have considered. See *Hiller v. Prosper Tex, Inc.*, 437 S.W.2d 412, 414 (Tex.Civ.App.1969, no writ). However, the testimony on that issue was disputed, and the appellants' claimed confusion concerning the amount of the payment required to avoid foreclosure is not in itself grounds for an injunction, as the bank specified in its letters of November 14 the exact amount it claimed was due, and appellants have failed to tender that amount or any part of it. See *Investors Realty Trust v. Carlton Corporation*, 541 S.W.2d 289, 292 (Tex.Civ.App.1976, no writ).

■ The appellants' failure to tender the $500,000 benefit they received from the June loan gives rise to an additional, independent reason for denying the injunction. Under fundamental principles of equity, a debtor seeking equitable relief from a foreclosure sale must first tender the full sum of the admitted debt. *Breitkreutz v. Cook*, 135 Tex. 574, 144 S.W.2d 534 (1940); *Goldfrank, Frank & Co. v. Young*, 64 Tex. 432 (1885); *Carden v. Short*, 31 S.W. 246 (Tex. Civ.App.1895, writ ref.); *American Century Mortgage Investors v. Regional Center, Ltd.*, 529 S.W.2d 578 (Tex.Civ.App.1975, writ ref. n. r. e.); *Investors Realty Trust v. Carlton Corporation*, 541 S.W.2d 289 (Tex. Civ.App.1976, no writ); *Poff v. Rollinsford Savings Bank*, 105 S.W.2d 782 (Tex.Civ. App.1937, no writ).

■ The evidence is undisputed that appellants have not paid and cannot pay the

---

1. The bank's loan transaction records indicate only that the entire $500,000 was advanced and that interest remained due on both notes. We have found nothing to show what was done with the rental profits.

principal amount owing on the $5,000,000 note. As for the interest on both notes and the principal on the $500,000 note, the evidence presented at trial was at least sufficient to support the conclusion that these sums likewise had not been tendered by the appellants. Having failed to do equity, appellants are not entitled to seek equity.

■ Appellees' final point is that the appellants had an adequate remedy at law and failed to prove that they would suffer irreparable harm if left to pursue that remedy. Absent such a showing, of course an injunction would be improper. *Storey v. Central Hide & Rendering Co.*, 148 Tex. 509, 226 S.W.2d 615 (1950); *Broussard v. L. Cartwright Realty Co.*, 179 S.W.2d 777 (Tex.Civ.App.1944, writ ref.); *Covarrubia v. Butler*, 502 S.W.2d 229 (Tex.Civ.App.1973, writ ref. n. r. e.).

■ Appellants contend that unless the foreclosure sale is enjoined they will lose their substantial equity and investment in the property, apparently because they fear the sale will bring a price greatly under the fair market value of the land. However, appellants have presented no evidence to indicate that the sale price will be anything other than fair. In any event, even if proven, such allegations would not in themselves be grounds requiring the issuance of an injunction. See *Cox v. Guaranty National Bank*, supra; *Floore v. Morgan*, supra.

■ Appellants have failed to establish that their legal remedies against the bank are inadequate. Although they allege that the property is "unique," they do not explain how this is so; their objective is to sell it, not preserve it, and they presented no evidence to the trial court that money damages would not compensate them for any loss.

The judgment of the trial court is affirmed.