**Reverse and Remand; Opinion Filed April 9, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-12-00653-CV

## BRANCH BANKING AND TRUST COMPANY, Appellant
## V.
## TCI LUNA VENTURES, LLC AND TRANSCONTINENTAL
## REALTY INVESTORS, INC., Appellees

**On Appeal from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. dc-12-03653**

## OPINION ON REHEARING

Before Justices Francis, Murphy, and Evans
Opinion by Justice Evans

We deny appellant's motion for rehearing and, on our own motion, withdraw our opinion dated February 21, 2013, and vacate the judgment of that date. This is now the opinion of the Court.

Branch Banking and Trust Company appeals a temporary injunction order prohibiting it from foreclosing on two properties owned by TCI Luna Ventures, LLC. In a single issue, BB&T argues that the trial court abused its discretion when it granted the temporary injunction because TCI Luna failed to present evidence to support at least one of the elements necessary for the issuance of a temporary injunction. We conclude the trial court abused its discretion when it found that TCI Luna had shown a probable right on final trial to the relief sought for any of its causes of action. We reverse the trial court's order and dissolve the temporary injunction.

# BACKGROUND

In June 2005, Transcontinental Realty Investors, Inc. executed a $10,000,000 promissory note payable to Colonial Bank that was secured by deeds of trust on twelve properties, including the two that are the subject of the temporary injunction order (the Mansfield and Sheffield properties). In 2010, Colonial Bank assigned the note and deeds of trust to BB&T. Also in 2010, Transcontinental Realty assigned its interest in the secured properties to TCI Luna.[1] TCI Luna did not pay off the note when it matured on September 29, 2010, leaving an unpaid balance of $8,386,512. Failure to pay off the balance of the note when it matured was an event of default, one remedy for which was foreclosure.

BB&T foreclosed on three of TCI Luna's properties and sent notices of foreclosure for six more before TCI Luna filed for bankruptcy in September 2011. While in bankruptcy, TCI Luna and BB&T discussed TCI Luna voluntarily requesting a dismissal of its bankruptcy with prejudice, deeds in lieu of foreclosure for some properties in return for lien releases on other properties, and BB&T obtaining and delivering to TCI Luna appraisals on each property as part of BB&T's foreclosure on any property. The parties dispute whether or not they resolved the following issues before dismissal of TCI Luna's bankruptcy: how to handle any disagreement about the appraised value of a property; whether the foreclosure bid prices or the full appraised values would be used as the credits against the debt; and for which properties BB&T would accept deeds in lieu of foreclosure in exchange for releasing its lien on the other properties.

After TCI Luna obtained a voluntary dismissal of its bankruptcy in January 2012, BB&T foreclosed on two properties and sent notices of foreclosure for four more properties including the Mansfield and Sheffield properties. TCI Luna responded by filing this suit in April 2012. In

---

[1] Other than in the factual recitations in their briefs, the parties do not distinguish between Transcontinental Realty and TCI Luna which are related entities. We will refer to both as TCI Luna.

its petition, TCI Luna did not dispute the existence of the loan, the note, the unpaid debt, or the security liens on its properties, although it calculated the amount of debt it owed differently than BB&T. TCI Luna contended instead that the parties formed an enforceable agreement that limited BB&T's right to foreclose on the properties in exchange for TCI Luna requesting a dismissal of its bankruptcy proceeding. TCI Luna also alleged that BB&T's promises made a part of the agreement constituted misrepresentations that were actionable as fraud, statutory real estate fraud, and deceptive trade practices. In addition, TCI Luna argued that BB&T's previous foreclosures were wrongful and that foreclosing on the Mansfield and Sheffield properties would constitute tortious interference with existing contracts of sale to third parties. TCI requested, and the trial court granted, a temporary injunction preventing BB&T from foreclosing on the Mansfield and Sheffield properties. This interlocutory appeal followed.

## ANALYSIS

### I. Standard of Review

We review a trial court's order granting a temporary injunction for abuse of discretion. *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993). When conducting our evaluation, we do not substitute our judgment for that of the trial court, but determine only whether the court's action was so arbitrary as to exceed the bounds of reasonable discretion. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). We draw all legitimate inferences from the evidence in the light most favorable to the trial court's ruling. *Id.* When the trial court bases its decision on conflicting evidence, there is no abuse of discretion. *Id.* However, the trial court abuses its discretion when it misapplies the law to established facts or when there is no evidence that supports the trial court's determination of the existence of a probable injury or a probable right of recovery. *Id.* at 211 ("The trial court does not abuse its discretion if some evidence reasonably supports the trial court's decision."). We review de novo any determinations on

–3–

questions of law that the trial court made in support of the order. *Tom James of Dallas, Inc. v. Cobb*, 109 S.W.3d 877, 883 (Tex. App.—Dallas 2003, no pet.).

A temporary injunction is an extraordinary remedy and will not issue as a matter of right. *Butnaru*, 84 S.W.3d at 204. Rather, an applicant must plead and prove: (1) a cause of action against the opposing party; (2) a probable right on final trial to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id.; Walling*, 863 S.W.2d at 57. We first consider whether TCI Luna presented sufficient evidence of a probable right to recover on at least one of its causes of action. Even though we review an applicant's probable right of recovery, we do not reach the merits of the underlying dispute on interlocutory appeal and will not assume the evidence presented at the temporary injunction hearing will be the same as the evidence developed at a full trial on the merits. *See Cobb*, 109 S.W.3d at 884–85.

## II. Breach of Contract Claim

TCI Luna argued and pleaded that in exchange for dismissal of the bankruptcy, BB&T promised to: (1) obtain and deliver to TCI Luna appraisals on the properties; (2) "meet with Plaintiffs in good faith in an effort to determine and agree upon the fair market values of the properties"; and (3) accept deeds in lieu of foreclosure on some of the properties in full satisfaction of the debt thereby allowing TCI Luna to "keep other properties free and clear." TCI Luna further argued in its brief and pleaded that TCI Luna "understood that they would receive full credit toward the Note for the fair market value of any properties foreclosed by BBT."

BB&T contends TCI Luna's proof at the hearing on the temporary injunction did not support its argument and pleadings that an agreement was formed. TCI Luna's representative testified that, in exchange for TCI Luna moving for voluntary dismissal of its bankruptcy, BB&T agreed only to provide appraisals on the properties. As to the other alleged terms of agreement, under both direct and cross-examination, TCI Luna's representative consistently stated that:

(1) the parties agreed to meet *after dismissal of the bankruptcy* to try to resolve disputes that might arise when appraised values were received; (2) the parties never discussed, or agreed to, the relation between the appraised value of the properties and the amount of credit against the outstanding loan balance upon foreclosure;[2] (3) the parties agreed to meet *after dismissal of the bankruptcy* and attempt to agree on whether "some properties. . . would go back to the bank, and some properties we would keep free and clear"; and (4) there was no agreement before dismissal of the bankruptcy other than an agreement to meet in the future in an effort to agree to terms of a contract. In addition to that testimony, the record contains an email from TCI Luna's counsel that the parties "agreed to sit down and discuss in good faith this deal" after the bankruptcy was dismissed. BB&T's attorney's reply to this email confirmed that "BB&T will discuss the deal . . . and BB&T when ready is willing to work through the properties."

The elements of a valid and enforceable contract are: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Hubbard v. Shankle*, 138 S.W.3d 474, 481 (Tex. App.—Fort Worth 2004, pet. denied). The necessary elements of both written and oral contracts are the same and must be present for a contract to be binding. *Id.* A contract's material terms must be sufficiently definite and reasonably certain to both parties. *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000). Accordingly, all essential terms of the agreement must be agreed upon before a contract may be enforced by the courts. *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992). If the terms of an alleged contract are so indefinite that it is impossible for the courts to determine the rights and obligations of the parties, it is not an

---

[2] TCI Luna's representative testified TCI Luna decided to rely on section 51.003 of the property code rather than discuss this term with BB&T.

enforceable agreement. *Shin-Con Dev. Corp. v. I.P. Invs., Ltd.*, 270 S.W.3d 759, 765 (Tex. App.—Dallas 2008, pet. denied). Parties may agree on some terms sufficient to create a contract, leaving other provisions for later negotiation. *See Scott v. Ingle Bros. Pac., Inc.*, 489 S.W.2d 554, 555 (Tex. 1972); *Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 133 (Tex. App.—Waco 2005, pet. denied). When an agreement leaves material terms open for future adjustment and agreement that never occur, it is not binding upon the parties and merely constitutes an agreement to agree. *See Fort Worth Indep. Sch. Dist.*, 22 S.W.3d at 846; *Ski River*, 167 S.W.3d at 134.

BB&T argues the testimony of TCI Luna's own representative and both parties' counsel's emails established that there was no material term of obligation on the part of BB&T to do anything. According to TCI Luna's representative, BB&T promised nothing other than continued negotiations of two subjects after dismissal of the bankruptcy: (1) disagreements about the valuations in future appraisal reports; and (2) a potential agreement to deed some properties to BB&T in exchange for BB&T's release of liens on other properties. As such, material terms were omitted from the alleged agreement rendering it unenforceable. *See Fiduciary Fin. Servs. of Sw., Inc. v. Corilant Fin., L.P.*, 376 S.W.3d 253, 256 (Tex. App.—Dallas 2012, pet. denied). This evidence proves an agreement to agree, not an enforceable contract. Accordingly, there was no factual dispute for the trial court to resolve regarding formation of the alleged agreement. In the absence of any evidentiary support of an enforceable agreement, TCI Luna's breach of contract claim does not support the temporary injunction order.

### III. Fraud Claims

BB&T argues that TCI Luna failed to prove its claims of fraud and statutory fraud involving real estate. BB&T contends that TCI Luna simply alleged—but failed to prove—that BB&T's promises made as part of the alleged oral agreement between it and BB&T constituted

misrepresentations made by BB&T to induce TCI Luna to request a dismissal of its bankruptcy and consent to the subsequent foreclosures. Common to both theories pleaded by TCI Luna is the requirement that there be a material, false, misrepresentation. *See Formosa Plastics Corp. USA v. Presidio Eng's & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) (elements of common law fraud include making material misrepresentation that was false); *Texas Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 366 (Tex. App.— Dallas 2009, pet. denied) (elements of statutory fraud involving sale of real estate pursuant to section 27.01 of the Texas Business and Commerce Code include making false representation of a past or existing material fact or false and material promise to do an act with the intention of not fulfilling it).

The record here shows that the parties never finalized terms of an agreement but only agreed to continue negotiations after the bankruptcy was dismissed. TCI Luna does not accuse BB&T of failing and refusing to continue negotiations of contractual terms after the bankruptcy was dismissed, nor is there any evidence of such conduct in the record. Because there was no evidence presented at the temporary injunction hearing of an actionable misrepresentation, TCI Luna's fraud and statutory fraud claims cannot support the temporary injunction order.

## IV. DTPA

TCI Luna supported the request for temporary injunction in the trial court with a claim under the Deceptive Trade Practices Act. *See* TEX. BUS. & COM. CODE ANN. §§ 17.41-.63 *et seq.*, (West 2011 & Supp. 2012). BB&T argues that TCI Luna's DTPA claims arise from a loan of money which is not a "service" under the DTPA. *See, e.g., La Sara Grain Co. v. First Nat. Bank of Mercedes*, 673 S.W.2d 558, 566 (Tex. 1984); *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169 (Tex.1980). If the loan is not a service, BB&T argues, then TCI Luna cannot be a "consumer" as

defined under and required by the DTPA. *See* TEX. BUS. & COM. CODE ANN. § 17.45(4), (10). Both arguments are correct. The DTPA claims cannot support the temporary injunction.

### V. Wrongful Foreclosure Claims

BB&T contends that TCI Luna cannot prevail on its wrongful foreclosure claims. TCI Luna argued to the trial court that BB&T (1) induced TCI Luna to consent to foreclosures with fraudulent statements, (2) used the bid price as the credit for each foreclosure sale instead of the appraised, fair market value, (3) foreclosed on properties after TCI Luna cured its defaults, and (4) failed to provide notices of default and acceleration before foreclosure. Our disposition above of TCI Luna's claims for breach of contract, fraud, and DTPA also resolves TCI Luna's wrongful foreclosure claim based on fraudulent inducement because the alleged fraudulent statements TCI Luna asserts it relied upon are the same alleged misrepresentations we have already concluded are not actionable. We consider here BB&T's other arguments related to TCI Luna's wrongful foreclosure arguments to the trial court.

### A. Credit for Fair Market Value or Foreclosure Bid Prices

TCI Luna argues as a factual matter, pleaded, and sought to prove at the hearing that the correct calculation of its debt should be done using the fair market values of the foreclosed properties as credits to the balance owed on the note, rather than the prices actually paid at the foreclosure sale. By recalculating the several foreclosure sales that had already occurred based on appraised fair market values, TCI Luna argued and alleged that the amount it owed on the note was substantially reduced by the time of the temporary injunction hearing. At the hearing, TCI Luna's representative testified that section 51.003 of the property code entitled it to receive credit for the appraised, fair market value of each property, rather than the cash or credit amount

bid at the foreclosure sale.[3] TCI Luna then argued that the greatly reduced amount of the debt justified enjoining foreclosure of the Mansfield and Sheffield properties that were allegedly worth far more than the debt TCI Luna stated it owed.[4]

BB&T argued below and here that Section 51.003 of the Texas Property Code addresses deficiency judgments and is not applicable to this lawsuit. Subsection (a) of 51.003 describes a deficiency suit as an "action brought to recover the deficiency" *after* a foreclosure sale. TEX. PROP. CODE ANN. § 51.003(a) (West 20007). Subsection (b) specifically provides that requesting a court to determine fair market value is a defense for reducing liability for a deficiency judgment, stating:

> Any person against whom such a recovery is sought by motion may request that the court in which the action is pending determine the fair market value of the real property as of the date of the foreclosure sale.

*Id.* BB&T argues that the phrase, "against whom such a recovery is sought," has no other reference than an "action brought to recover the deficiency" in subsection (a). We agree. The statute is clear on this matter. *See Martin v. PlainsCapital Bank*, __ S.W.3d __, 2013 WL 1313770 at *6 (Tex. App.—Dallas Mar. 28, 2013, no. pet. h.) ("Section 51.003 is an affirmative defense because the borrower is seeking an offset"); *Interstate 35/Chisam Rd., L.P. v. Moayedi*, 377 S.W.3d 791, 797 (Tex. App.—Dallas 2012, pet. filed) ("Section 51.003 was designed to protect borrowers and guarantors in deficiency suits brought following the non-judicial

---

[3] TCI Luna did not specify a claim under section 51.003 in its pleadings; however its factual statement made these allegations without specific reference to section 51.003. TCI Luna's wrongful foreclosure count incorporated those allegations by reference. BB&T does not complain on appeal about TCI Luna's pleading and after being served with the amended petition did not object to the testimony at the hearing specifically connecting the calculation with section 51.003. Accordingly, we address the statute to the extent it is incorporated into TCI Luna's wrongful foreclosure theory of recovery.

[4] TCI Luna extends this argument in its brief to assert that a foreclosure sale that occurred after the temporary injunction order was signed resulted in full repayment of the debt if the debt is calculated using section 51.003. This evidence was not before the trial court and is contested by BB&T. We do not have jurisdiction to take new evidence and make findings of facts. *See Wisdom v. Smith*, 209 S.W.2d 164, 166 (Tex. 1948). Accordingly we do not consider TCI Luna's arguments that are outside the temporary injunction hearing record.

foreclosure on realty."); *Comiskey v. FH Partners, LLC*, 373 S.W.3d 620, 643 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (declining to apply section 51.003 to a declaratory judgment action).

In this case, BB&T has not sued TCI Luna for a deficiency judgment. We have not found, and TCI Luna does not cite, any opinion holding that section 51.003 provides an affirmative cause of action against a creditor by a debtor who has not been sued for a deficiency judgment. Even if we construe TCI Luna's argument as asserting that there is confusion about the amount owed, that is not a sufficient reason to enjoin foreclosure. *Ginther-Davis Ctr., Ltd. v. Houston Nat. Bank*, 600 S.W.2d 856, 864 (Tex. Civ. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.) ("appellants' claimed confusion concerning the amount of the payment required to avoid foreclosure is not in itself grounds for an injunction."). As BB&T points out, merely that the sale may not bring the best price is not a basis to enjoin a foreclosure sale. *See Floore v. Morgan*, 175 S.W. 737, 739 (Tex. Civ. App.—Fort Worth 1915, no writ). TCI Luna did not respond to BB&T's arguments that TCI Luna has not shown any facts or law justifying the use of any credit to the balance owed on the note other than the cash or credit bid price at each foreclosure sale. Accordingly, TCI Luna's debt recalculation arguments under section 51.003 do not support the temporary injunction.

### B. Other Grounds for Wrongful Foreclosure

BB&T contends TCI Luna's other bases for claiming wrongful foreclosure are each precluded by the terms of the note and deeds of trust. TCI Luna's argument that it cured pre-maturity default so there was no default justifying BB&T's foreclosures is inapplicable to the temporary injunction order, which prohibits the foreclosure sales based on post-maturity non-payment of the note. Although TCI Luna claims the foreclosures were wrongful due to lack of notices of default and acceleration, it failed to put on any evidence that notice was required.

Instead, BB&T argues and the evidence shows, TCI Luna waived all such notices. *See Adams v. First Nat'l Bank of Bells/Savoy*, 154 S.W.3d 859, 867 (Tex. App.—Dallas 2005, no pet.) (waiver of notice of default permissible). Moreover, the default BB&T sought to remedy by foreclosure was that the note had matured and not been paid which did not require notice. *See Deposit Ins. Bridge Bank, N.A. v. McQueen*, 804 S.W.2d 264, 267 (Tex. App.—Houston [1st Dist.] 1991, no writ) (notice of acceleration not required when note matures on its own terms). Finally, there is no evidence in the record to support TCI Luna's contention that BB&T is obligated to obtain its consent to foreclosure. As BB&T argues, the note and deeds of trust did not obligate BB&T to obtain TCI Luna's consent to foreclosure or provide notice of foreclosure. Moreover, we have concluded above the parties did not enter into an enforceable agreement restricting BB&T's rights to foreclose. Because BB&T demonstrated that TCI Luna did not establish a probable right to recover on its wrongful foreclosure claims, the temporary injunction order is not supportable on this basis.

### VI. Tortious Interference with Existing Contracts

Lastly, TCI Luna justified its temporary injunction request to the trial court as necessary to avoid BB&T's tortious interference with TCI Luna's contracts to sell the Mansfield and Sheffield properties to two separate buyers. BB&T correctly argues that bona fide exercise of one's own contractual rights constitutes a privilege to interfere with another's contract. *See Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690-91 (Tex. 1989). Having concluded there was no evidence to substantiate the conclusion that BB&T's foreclosures were wrongful, breached any agreement, or operated a fraud on TCI Luna, BB&T was within its rights to proceed with the foreclosure sales. Additionally, TCI Luna failed to bring forward any evidence at the temporary injunction hearing that the foreclosure sales would be independently tortious, further negating the trial court's reliance on TCI Luna's tortious interference claim to justify the temporary

injunction order. *See Ginther-Davis*, 600 S.W.2d at 861 (no "automatic right to an injunction" even if foreclosure might interfere with a sale of the property). As argued by BB&T, the evidence presented at the temporary injunction hearing could not support a finding that TCI Luna had a probable right of recovery on its claim for tortious interference with an existing contract. Accordingly, this cause of action cannot support the issuance of the temporary injunction order.

## CONCLUSION

Having concluded that the record does not provide any basis for the trial court's finding that TCI Luna had shown a probable right of recovery on final trial on any of its claims, we do not reach the remainder of BB&T's arguments. We resolve BB&T's sole issue in its favor and conclude the trial court abused its discretion by granting the temporary injunction. We reverse the trial court's temporary injunction order, dissolve the temporary injunction, and remand the case to the trial court for further proceedings.

120653HF.P05

/David W. Evans/
DAVID W. EVANS
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

BRANCH BANKING AND TRUST
COMPANY, Appellant

No. 05-12-00653-CV        V.

TCI LUNA VENTURES, LLC and
TRANSCONTINTAL REALTY, Appellees

On Appeal from the 192nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. dc-12-03653.
Opinion delivered by Justice Evans.
Justices Francis and Murphy participating.


We **WITHDRAW** the opinion and **VACATE** the judgment of February 21, 2013. This is now the judgment of the Court.

In accordance with this Court's opinion of this date, we **REVERSE** the temporary injunction order of the trial court, **DISSOLVE** the temporary injunction, and **REMAND** the case to the trial court for further proceedings. It is **ORDERED** that appellant Branch Banking and Trust Company recover its costs of this appeal from appellees TCI Luna Ventures, LLC and Transcontinental Realty Investors, Inc.


Judgment entered this April 9, 2013.


/David W. Evans/
DAVID W. EVANS
JUSTICE