**Reverse and Remand in part; and Affirmed in part; and Opinion Filed October 13, 2016**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-10-00235-CV

### WILLIAM MARTIN, Appellant
### V.
### PLAINSCAPITAL BANK, Appellee

**On Appeal from the 429th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 429-01773-2008**

## MEMORANDUM OPINION

Before Chief Justice Wright and Justices Bridges and Brown
Opinion by Justice Bridges

William Martin appeals the trial court's judgment awarding PlainsCapital Bank $332,927.27 in damages and $127,558.24 in attorney's fees on PlainsCapital's counterclaim for damages resulting from Martin's default under residential construction loan documents.

On original submission, this Court reversed the trial court's judgment and remanded to the trial court for further proceedings, holding: (1) the trial court erred in determining section 51.003 of the Texas Property Code did not apply to PlainsCapital's deficiency suit against Martin; (2) "fair market value," for purposes of determining a deficiency under section 51.003, was the historic measure of fair market value: the price a property would bring when offered for sale by one who desired to sell, but was not obliged to sell, and was bought by one who desired to buy, but was under no necessity of buying; (3) neither evidence of the price a property sold for

at foreclosure nor the actual future sale price constituted competent evidence of fair market value under section 51.003; (4) the evidence was therefore legally insufficient to support the trial court's damages award; and (5) remand to the trial court was necessary for a determination of fair market value, holding costs and sales expenses incurred by PlainsCapital, and attorney's fees.

The Texas Supreme Court agreed that PlainsCapital's claim against Martin falls within the provisions of section 51.003. However, as to "fair market value" as used in section 51.003, the court reasoned as follows:

> The Legislature used the phrase "fair market value" in § 51.003 without defining it, so we would ordinarily presume the common meaning of the term applies, as did the court of appeals. However, the statute enumerates categories of evidence and clearly specifies that they may be considered by trial courts in determining fair market value. TEX. PROP. CODE § 51.003(b). For example, § 51.003(b)(5) specifies that a trial court, when calculating the fair market value as of the date of the foreclosure sale, may consider evidence of "the necessity and amount of any discount to be applied to the future sales price." This factor is forward looking, allowing the trial court to consider the price for which the lender eventually sells the property and to apply a discount, if appropriate, to determine a value as of the foreclosure sale date. It may seem odd to make the price for which the property sold after foreclosure an integral component of competent evidence of the property's fair market value on the foreclosure sale date, but that is clearly what the Legislature intended. If it were not, then the relevant part of § 51.003(b)(5) would be nonsensical because an unknown fair market value, which is the value being sought, cannot mathematically be determined by applying a discount to an unknown future sales price, nor could either a prospective buyer or the seller know what the future sales price will be in order to factor it into their decision to buy or sell, regardless of whether a discount factor is applied. And we do not attribute to the Legislature an intent to enact nonsensical statutes. *See* TEX. GOV'T CODE § 311.021(3) ("In enacting a statute, it is presumed that ... a just and reasonable result is intended...."); *Hernandez v. Ebrom*, 289 S.W.3d 316, 321 (Tex. 2009). Further, if we were to rule the future sales price competent evidence, but only upon a showing of comparable market conditions between the foreclosure sale and the future sale, we would be adding words to § 51.003. We refuse to do that in the absence of clear legislative intent to reach a different result from that reached by applying the plain language of the statute, or to prevent the statute from yielding an absurd or nonsensical result. *See Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001). Therefore, the enumerated factors in § 51.003(b) will support a fair market value finding under the statute even though that type of evidence might not otherwise be competent in the common or historical fair market value construct. That being so, the term "fair market value"

in § 51.003 does not equate precisely to the common, or historical, definition. Rather, it means the historical definition as modified by evidence § 51.003(b) authorizes the trial court to consider in its discretion, to the extent such evidence is not subsumed in the historical definition.

*PlainsCapital Bank v. Martin*, 459 S.W.3d 550, 556-57 (Tex. 2015).

On the record in this case, the Texas Supreme Court concluded "the trial court did not abuse its discretion by calculating the property's fair market value using the $599,000 future sales price, not applying a discount to reduce the price further, and deducting PlainsCapital's actual holding costs of $75,376.41 and actual sales costs of $45,907.04." *Id.* at 558. The court further concluded the evidence was legally sufficient to support the trial court's finding that the fair market value of the property on the date of the foreclosure sale for section 51.003 purposes was $477,715.65. *Id.*

On remand, we must determine (1) whether, if the issue was preserved for our review, the evidence was factually sufficient to support the trial court's fair market value determination; (2) whether the evidence was legally and factually sufficient to support the trial court's determination of PlainsCapital's holding and sales costs; and (3) whether, in light of our resolution of these issues, we should affirm the trial court's award of attorney's fees to PlainsCapital.

As an initial matter, we note that Martin argued in his original brief, among other things, that the evidence was factually insufficient to support the trial court's finding that the fair market value of the property was $477,715.65. Martin challenged the factual sufficiency of the evidence to support the trial court's use of $599,000, the sale price fifteen months after foreclosure, to calculate fair market value. In its original brief and on remand, PlainsCapital does not argue that Martin has waived his challenge to the factual sufficiency of the evidence, and PlainsCapital addresses the merits of Martin's factual sufficiency challenge. Accordingly, we conclude Martin's factual sufficiency challenged is preserved for our review.

–3–

In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury verdict. *Fulgham v. Fischer*, 349 S.W.3d 153, 157 (Tex. App.—Dallas 2011, no pet.). When the appellate record contains a reporter's record as it does in this case, findings of fact are not conclusive and are binding only if supported by the evidence. *Id.* We review a trial court's findings of fact under the same legal and factual sufficiency of the evidence standards used when determining if sufficient evidence exists to support an answer to a jury question. *Id.* (citing *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994)). When an appellant challenges the factual sufficiency of the evidence on an issue, we consider all the evidence supporting and contradicting the finding. *Id.* (citing *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989)). We set aside the finding for factual insufficiency only if the finding is so contrary to the evidence as to be clearly wrong and manifestly unjust. *Id.* (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam)). In a bench trial, the trial court, as factfinder, is the sole judge of the credibility of the witnesses. *Id.* As long as the evidence falls "within the zone of reasonable disagreement," we will not substitute our judgment for that of the fact-finder. *Id.* (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)).

When an appellant challenges the legal sufficiency of an adverse finding on which he did not have the burden of proof at trial, he must demonstrate there is no evidence to support the adverse finding. *Id.* When reviewing the record, we determine whether any evidence supports the challenged finding. *Id.* If more than a scintilla of evidence exists to support the finding, the legal sufficiency challenge fails. *Id.*; *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (more than scintilla of evidence exists when evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions").

We review de novo a trial court's conclusions of law. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). We are not bound by the trial court's legal

conclusions, but the conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Fulgham*, 349 S.W.3d at 157-58. Incorrect conclusions of law will not require reversal if the controlling findings of fact will support a correct legal theory. *Id.*

The trial court found that, if section 51.003 did apply in this case, the fair market value of the subject property under section 51.003 was $477,715.65, which the court determined by subtracting PlainsCapital's $75,376.41 in holding costs and $45,907.94 in costs of sale from the "future sales price" of $599,000. Accordingly, the court concluded that, if section 51.003 applied, Martin would not be entitled to an offset because the fair market value is less than the amount bid at the foreclosure sale: $539,000.

In his post-remand brief, Martin cites a June 2008 appraisal performed on behalf of PlainsCapital valuing the subject property at $825,000 as of the foreclosure date. Martin argues there is "no evidence in the record to explain the $599,000 price." Further, Martin argues that, "had the trial court applied §51.003, it would have likely determined [fair market value] in an amount at least equal to the secured debt."[1] Martin asserts we should "remand the case to the trial court with direction to determine [fair market value] based on all the evidence."

In concluding the evidence was legally sufficient to support the trial court's finding that the fair market value of the property was $477,715.65 on the date of the foreclosure, the Texas Supreme Court essentially concluded that, taking into consideration the future sales price of $599,000, more than a scintilla of evidence existed to support the trial court's finding. *See Martin*, 459 S.W.3d at 558; *Fulgham*, 349 S.W.3d at 157 (if more than scintilla of evidence exists to support finding, legal sufficiency challenge fails). In assessing the factual sufficiency of

---

[1] The record shows that, immediately prior to the foreclosure sale, Martin owed $770,757.45 in outstanding principal, $15,791.02 in interest, and $2705.52 in attorney's fees incurred to foreclose on the property.

the evidence, viewing all the evidence supporting and contradicting the trial court's finding of fair market value, we must therefore take into consideration the future sales price of $599,000. *See Martin*, 459 S.W.3d at 556.

However, the question is whether, considering all the evidence supporting and contradicting the finding, the evidence was factually sufficient to show that the fair market value of the property was $477,715.65 on the date of the foreclosure. *See Fulgham*, 349 S.W.3d at 157. If we consider only the future sales price of the property, as the Texas Supreme Court did in determining a scintilla of evidence supported the trial court's determination that the $599,000 future sales price was a proper figure to use as fair market value, section 51.003's reference to "fair market value of the real property *as of the date of the foreclosure sale*" would be rendered meaningless. *See* TEX. PROP. CODE ANN. §51.003(b) (West 2014); *Martin*, 459 S.W.3d at 558. Applying such an analysis, only the future sales price would be relevant, and "future sales price" would effectively be substituted for section 51.003's reference to fair market value as of the date of the foreclosure sale. This result would be contrary to section 51.003's purpose of adding "balance to the mortgagor-mortgagee relationship regarding deficiency judgments." *Martin*, 459 S.W.3d at 554. If only a future sales date is necessary to determine fair market value as of the date of the foreclosure sale, a lender is free to wait, more than fifteen months in this case but presumably not longer than the two-year limitations period provided in section 51.003, until the property eventually sells and then seek recovery of the amount by which that future sales price falls short of the amount owed on the property at the time of foreclosure. Again, such a corruption of the plain meaning of section 51.003 is nonsensical at best. *See id.*

Considering all the evidence supporting and contradicting the finding of fair market value, the record shows PlainsCapital's own appraisal made at the time of the foreclosure valued the property at $825,000 as of the foreclosure date. Further, the record shows PlainsCapital was

prepared to bid as high as $807,887.05 for the property at the foreclosure sale. Plainscapital's broker price opinion dated May 28, 2008 stated a $770,000 market value for the property. Nevertheless, the trial court entirely disregarded these valuations and relied solely on the $599,000 future sales price in making its fair market value determination. We conclude the trial court's fair market value determination was thereby rendered so contrary to the evidence as to be clearly wrong and manifestly unjust. *See Fulgham*, 349 S.W.3d at 157. Under these circumstances, we conclude the evidence is factually insufficient to support the trial court's determination that $599,000 was the fair market value of the subject property on the date of foreclosure before any holding costs or costs of sale were deducted. *See Fulgham*, 349 S.W.3d at 157. Accordingly, we reverse the trial court's determination of fair market value on the date of foreclosure and remand for a new trial on this issue.

As to the legal and factual sufficiency of the evidence to support the trial court's determination of PlainsCapital's holding and sales costs, the Texas Supreme Court summarized the evidence as follows:

> In regard to costs, Doug Cook, President of the North Dallas branch of PlainsCapital, testified as to the bank's holding costs and costs of sale. Cook relied on bank business records that listed in itemized detail the holding costs paid by PlainsCapital. He testified that the expenses totaled $75,376.41, and included maintenance items such as utilities, homeowner-association fees, insurance, and $14,136.15 in property taxes. As to sales costs, Cook testified that the bank spent $45,907.04 on real estate commissions and closing costs.

*Martin*, 459 S.W.3d at 558. In its findings of fact and conclusions of law, the trial court found that Martin breached the Construction Loan Agreement and was liable under the agreement for all amounts owed under the terms of the deed of trust including, among other things, holding costs, costs of sale, and attorney's fees. As set forth by the Texas Supreme Court, the record contains detailed evidence supporting the award of holding and sales costs. We conclude this

evidence was legally and factually sufficient to support the trial court's determination of holding and sales costs. *See Fulgham*, 349 S.W.3d at 157.

Regarding attorney's fees, PlainsCapital's claims against Martin for breach of the note, construction loan agreement, and deed of trust included claims for attorney's fees pursuant to sections 38.001 and following of the civil practice and remedies code and "applicable provisions of the Note and other Loan Documents between the parties." As we have noted, the trial court's findings of fact and conclusions of law found Martin was liable for, among other things, attorney's fees "under the Note, Construction Loan Agreement, and Deed of Trust." The trial court further found that the legal fees were reasonable and necessary, and the fees incurred defending the claims brought by Martin were also necessary to prosecute PlainsCapital's counterclaim against Martin because Martin pleaded that his claims were also defenses to PlainsCapital's counterclaim.

The Texas Supreme Court has determined that PlainsCapital's claim against Martin falls within the provision of section 51.003 and rejected PlainsCapital's attempt to "bypass the carefully crafted deficiency judgment statute with its two-year limitations period and other protections for borrowers and creditors by simply suing the borrower for some amount other than the difference between the amount of the secured debt and the exact foreclosure sales price." *See Martin*, 459 S.W.3d at 555. Thus, the Texas Supreme Court rejected PlainsCapital's theories of recovery under the note, construction loan agreement, and deed of trust. *See id.* Section 38.001 of the civil practice and remedies code provides for the recovery of attorney's fees if, among other things, a claim is for an oral or written contract. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (West 2015). Section 51.003 does not provide for the recovery of attorney's fees. *See* TEX. PROP. CODE ANN. § 51.003 (West 2014). Because PlainsCapital's recovery was limited to a recovery under section 51.003, and it did not recover on its breach of contract claim, it was not

entitled to recover attorney's fees under section 38.001. *See Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997) (because party did not recover damages on breach of contract claim, party could not recover attorney's fees under section 38.001). Under these circumstances, we conclude PlainsCapital is not entitled to an award of attorney's fees.

We vacate the trial court's award of attorney's fees. We remand for new trial on the issue of the fair market value of the property on the date of foreclosure and a determination of PlainsCapital's right to recovery, if any, under property code section 51.003. In all other respects, we affirm the trial court's judgment.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

100235F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MARTIN, WILLIAM, Appellant

No. 05-10-00235-CV        V.

PLAINSCAPITAL BANK, Appellee

On Appeal from the 429th Judicial District Court, Collin County, Texas
Trial Court Cause No. 429-01773-2008.
Opinion delivered by Justice Bridges. Chief Justice Wright and Justice Brown participating.

    In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's judgment (1) determining that $599,000 was the fair market value of the subject property on the date of foreclosure before any holding costs or costs of sale were deducted and (2) awarding PlainsCapital its attorney's fees. In all other respects, the trial court's judgment is **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

    It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered October 13, 2016.