**Affirmed and Opinion Filed April 26, 2017**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-10-00235-CV

**WILLIAM MARTIN, Appellant**
**V.**
**PLAINSCAPITAL BANK, Appellee**

**On Appeal from the 429th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 429-01773-2008**

## MEMORANDUM OPINION

Before Chief Justice Wright and Justices Bridges and Brown
Opinion by Justice Bridges

PlainsCapital Bank's October 28, 2016 motion for rehearing is granted. We withdraw our opinion issued October 13, 2016, and vacate our judgment of that date. The following is now the opinion of the Court.

William Martin appeals the trial court's judgment awarding PlainsCapital Bank $332,927.27 in damages and $127,558.24 in attorney's fees on PlainsCapital's counterclaim for damages resulting from Martin's default under residential construction loan documents.

On original submission, this Court reversed the trial court's judgment and remanded to the trial court for further proceedings, holding: (1) the trial court erred in determining section 51.003 of the Texas Property Code did not apply to PlainsCapital's deficiency suit against Martin; (2) "fair market value," for purposes of determining a deficiency under section 51.003,

was the historic measure of fair market value: the price a property would bring when offered for sale by one who desired to sell, but was not obliged to sell, and was bought by one who desired to buy, but was under no necessity of buying; (3) neither evidence of the price a property sold for at foreclosure nor the actual future sale price constituted competent evidence of fair market value under section 51.003; (4) the evidence was therefore legally insufficient to support the trial court's damages award; and (5) remand to the trial court was necessary for a determination of fair market value, holding costs and sales expenses incurred by PlainsCapital, and attorney's fees.

The Texas Supreme Court agreed that PlainsCapital's claim against Martin falls within the provisions of section 51.003. However, as to "fair market value" as used in section 51.003, the court reasoned as follows:

> The Legislature used the phrase "fair market value" in § 51.003 without defining it, so we would ordinarily presume the common meaning of the term applies, as did the court of appeals. However, the statute enumerates categories of evidence and clearly specifies that they may be considered by trial courts in determining fair market value. TEX. PROP. CODE § 51.003(b). For example, § 51.003(b)(5) specifies that a trial court, when calculating the fair market value as of the date of the foreclosure sale, may consider evidence of "the necessity and amount of any discount to be applied to the future sales price." This factor is forward looking, allowing the trial court to consider the price for which the lender eventually sells the property and to apply a discount, if appropriate, to determine a value as of the foreclosure sale date. It may seem odd to make the price for which the property sold after foreclosure an integral component of competent evidence of the property's fair market value on the foreclosure sale date, but that is clearly what the Legislature intended. If it were not, then the relevant part of § 51.003(b)(5) would be nonsensical because an unknown fair market value, which is the value being sought, cannot mathematically be determined by applying a discount to an unknown future sales price, nor could either a prospective buyer or the seller know what the future sales price will be in order to factor it into their decision to buy or sell, regardless of whether a discount factor is applied. And we do not attribute to the Legislature an intent to enact nonsensical statutes. *See* TEX. GOV'T CODE § 311.021(3) ("In enacting a statute, it is presumed that . . . a just and reasonable result is intended . . . ."); *Hernandez v. Ebrom*, 289 S.W.3d 316, 321 (Tex. 2009). Further, if we were to rule the future sales price competent evidence, but only upon a showing of comparable market conditions between the foreclosure sale and the future sale, we would be adding words to § 51.003. We refuse to do that in the absence of clear legislative intent to reach a different result

from that reached by applying the plain language of the statute, or to prevent the statute from yielding an absurd or nonsensical result. *See Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001). Therefore, the enumerated factors in § 51.003(b) will support a fair market value finding under the statute even though that type of evidence might not otherwise be competent in the common or historical fair market value construct. That being so, the term "fair market value" in § 51.003 does not equate precisely to the common, or historical, definition. Rather, it means the historical definition as modified by evidence § 51.003(b) authorizes the trial court to consider in its discretion, to the extent such evidence is not subsumed in the historical definition.

*PlainsCapital Bank v. Martin*, 459 S.W.3d 550, 556–57 (Tex. 2015).

On the record in this case, the Texas Supreme Court concluded "the trial court did not abuse its discretion by calculating the property's fair market value using the $599,000 future sales price, not applying a discount to reduce the price further, and deducting PlainsCapital's actual holding costs of $75,376.41 and actual sales costs of $45,907.04." *Id.* at 558. The court further concluded the evidence was legally sufficient to support the trial court's finding that the fair market value of the property on the date of the foreclosure sale for section 51.003 purposes was $477,715.65. *Id.*

On remand, we must determine (1) whether, if the issue was preserved for our review, the evidence was factually sufficient to support the trial court's fair market value determination; (2) whether the evidence was legally and factually sufficient to support the trial court's determination of PlainsCapital's holding and sales costs; and (3) whether, in light of our resolution of these issues, we should affirm the trial court's award of attorney's fees to PlainsCapital.

As an initial matter, we note that Martin argued in his original brief, among other things, that the evidence was factually insufficient to support the trial court's finding that the fair market value of the property was $477,715.65. Martin challenged the factual sufficiency of the evidence to support the trial court's use of $599,000, the sale price fifteen months after foreclosure, to calculate fair market value. In its original brief and on remand, PlainsCapital does not argue that

Martin has waived his challenge to the factual sufficiency of the evidence, and PlainsCapital addresses the merits of Martin's factual sufficiency challenge. Accordingly, we conclude Martin's factual sufficiency challenge is preserved for our review.

In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury verdict. *Fulgham v. Fischer*, 349 S.W.3d 153, 157 (Tex. App.—Dallas 2011, no pet.). When, as here, the appellate record contains a reporter's record, findings of fact are not conclusive and are binding only if supported by the evidence. *Id.* We review a trial court's findings of fact under the same legal and factual sufficiency of the evidence standards used when determining if sufficient evidence exists to support an answer to a jury question. *Id.* (citing *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994)). When an appellant challenges the factual sufficiency of the evidence on an issue, we consider all the evidence supporting and contradicting the finding. *Id.* (citing *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989)). We set aside the finding for factual insufficiency only if the finding is so contrary to the evidence as to be clearly wrong and manifestly unjust. *Id.* (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam)). In a bench trial, the trial court, as factfinder, is the sole judge of the credibility of the witnesses. *Id.* As long as the evidence falls "within the zone of reasonable disagreement," we will not substitute our judgment for that of the factfinder. *Id.* (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)).

When an appellant challenges the legal sufficiency of an adverse finding on which he did not have the burden of proof at trial, he must demonstrate there is no evidence to support the adverse finding. *Id.* When reviewing the record, we determine whether any evidence supports the challenged finding. *Id.* If more than a scintilla of evidence exists to support the finding, the legal sufficiency challenge fails. *Id.*; *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742,

751 (Tex. 2003) (more than scintilla of evidence exists when evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions").

We review de novo a trial court's conclusions of law. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). We are not bound by the trial court's legal conclusions, but the conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Fulgham*, 349 S.W.3d at 157–58. Incorrect conclusions of law will not require reversal if the controlling findings of fact will support a correct legal theory. *Id.*

The trial court found that, if section 51.003 did apply in this case, the fair market value of the subject property under section 51.003 was $477,715.65, which the court determined by subtracting PlainsCapital's $75,376.41 in holding costs and $45,907.94 in costs of sale from the "future sales price" of $599,000. Accordingly, the court concluded that, if section 51.003 applied, Martin would not be entitled to an offset because the fair market value is less than the amount bid at the foreclosure sale: $539,000.

In his post-remand brief, Martin cites a June 2008 appraisal performed on behalf of PlainsCapital valuing the subject property at $825,000 as of the foreclosure date. Martin argues there is "no evidence in the record to explain the $599,000 price." Further, Martin argues that, "had the trial court applied §51.003, it would have likely determined [fair market value] in an amount at least equal to the secured debt."[1] Martin asserts we should "remand the case to the trial court with direction to determine [fair market value] based on all the evidence."

Section 51.003(b) provides the following on the issue of determining a property's fair market value on the date of the foreclosure sale:

---

[1] The record shows that, immediately prior to the foreclosure sale, Martin owed $770,757.45 in outstanding principal, $15,791.02 in interest, and $2705.52 in attorney's fees incurred to foreclose on the property.

(b) Any person against whom such a recovery is sought by motion may request that the court in which the action is pending determine the fair market value of the real property as of the date of the foreclosure sale. The fair market value shall be determined by the finder of fact after the introduction by the parties of competent evidence of the value. Competent evidence of value may include, but is not limited to, the following: (1) expert opinion testimony; (2) comparable sales; (3) anticipated marketing time and holding costs; (4) cost of sale; and (5) the necessity and amount of any discount to be applied to the future sales price or the cashflow generated by the property to arrive at a current fair market value.

TEX. PROP. CODE ANN. § 51.003 (West 2014). At the beginning of the hearing, the trial court first elicited argument concerning whether section 51.003 applied in this case. In response to inquiries from Martin's counsel, the trial court twice agreed that it was "saying that Section 51.003 of the Property Code of Texas does not apply to this proceeding." Having determined section 51.003 did not apply, the trial court heard evidence of holding costs, costs of sale, and the sale price of the property.

In concluding the evidence was legally sufficient to support the trial court's finding that the fair market value of the property was $477,715.65 on the date of the foreclosure, the Texas Supreme Court essentially concluded that, taking into consideration the future sales price of $599,000, more than a scintilla of evidence existed to support the trial court's finding. *See Martin*, 459 S.W.3d at 558; *Fulgham*, 349 S.W.3d at 157 (if more than scintilla of evidence exists to support finding, legal sufficiency challenge fails). In assessing the factual sufficiency of the evidence, viewing all the evidence supporting and contradicting the trial court's finding of fair market value, we must therefore take into consideration the future sales price of $599,000. *See Martin*, 459 S.W.3d at 556.

However, the question is whether, considering all the evidence supporting and contradicting the finding, the evidence was factually sufficient to show that the fair market value of the property was $477,715.65 on the date of the foreclosure. *See Fulgham*, 349 S.W.3d at 157. The trial court was entitled to weigh the future sales price in accordance with the evidence

in determining whether the evidence supported a determination that the $599,000 future sales price was a proper figure to use as fair market value. *See* TEX. PROP. CODE ANN. § 51.003(b) (West 2014); *Martin*, 459 S.W.3d at 558. Considering all the evidence supporting and contradicting the finding of fair market value, the record shows PlainsCapital chose to proceed with a nonjudicial foreclosure. Immediately following the foreclosure in June 2008, PlainsCapital listed the property for sale at $839,000. Martin testified the property's value on the date of foreclosure was $850,000. PlainsCapital subsequently sought a deficiency judgment because there was a "substantial loss of principle [sic] interest, holding costs, real estate fees, costs of funds that [it] couldn't loan back out to other people." The record indicates PlainsCapital incurred holding costs of the property totaling $61,240.26 and paid $14,136.15 in property taxes. PlainsCapital was initially willing to bid up to $807,000 at the foreclosure sale. However, PlainsCapital used a market value of $770,000 based on a broker's opinion and bid seventy percent of that value at the foreclosure sale because the bank's history with foreclosure properties indicated this was the amount the bank was "going to end up with." In deciding on the seventy percent bid, PlainsCapital considered selling expenses and holding expenses. Thus, the market value PlainsCapital used was already discounted by thirty percent to account for selling and holding expenses.

PlainsCapital's own appraisal made at the time of the foreclosure valued the property at $825,000 as of the foreclosure date. Further, the record shows PlainsCapital was prepared to bid as high as $807,887.05 for the property at the foreclosure sale. PlainsCapital's broker price opinion dated May 28, 2008, stated a $770,000 market value for the property. Nevertheless, the trial court entirely disregarded these valuations and relied solely on the $599,000 future sales price in making its fair market value determination of $477,715.65. PlainsCapital presented no evidence of comparable sales at the time of sale fifteen months after the date of foreclosure.

–7–

Further, the trial court subtracted additional holding costs of $73,376.41 and costs of sale totaling $45,907.94 from the future sales price to arrive at the $477,715.65 value that the trial court concluded was the fair market value of the property under section 51.003 at the time of foreclosure fifteen months before.

In determining fair market value, a factfinder is allowed to set the value at any amount between the lowest and highest values established by the evidence. *Preston Reserve, L.L.C. v. Compass Bank*, 373 S.W.3d 652, 666 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Waterways on Intercoastal, Ltd. v. State*, 283 S.W.3d 36, 46 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (jury's fair market value determination falling within range of evidence supported by legally and factually sufficient evidence). The Texas Supreme Court has determined the evidence was legally sufficient to support the trial court's fair market value determination. *Martin*, 459 S.W.3d at 558. Because we cannot say, under these circumstances, that the trial court's fair market value determination was against the great weight and preponderance of the evidence, we conclude the evidence is factually sufficient to support the determination as well. *See Fulgham*, 349 S.W.3d at 157–58; *Waterways on Intercoastal*, 283 S.W.3d at 46. We resolve this issue in favor of PlainsCapital.

As to the legal and factual sufficiency of the evidence to support the trial court's determination of PlainsCapital's holding and sales costs, the Texas Supreme Court summarized the evidence as follows:

> In regard to costs, Doug Cook, President of the North Dallas branch of PlainsCapital, testified as to the bank's holding costs and costs of sale. Cook relied on bank business records that listed in itemized detail the holding costs paid by PlainsCapital. He testified that the expenses totaled $75,376.41, and included maintenance items such as utilities, homeowner-association fees, insurance, and $14,136.15 in property taxes. As to sales costs, Cook testified that the bank spent $45,907.04 on real estate commissions and closing costs.

*Martin*, 459 S.W.3d at 558.  In its findings of fact and conclusions of law, the trial court found that Martin breached the Construction Loan Agreement and was liable under the agreement for all amounts owed under the terms of the deed of trust including, among other things, holding costs, costs of sale, and attorney's fees.  As set forth by the Texas Supreme Court, the record contains detailed evidence supporting the award of holding and sales costs.  We conclude this evidence was legally and factually sufficient to support the trial court's determination of holding and sales costs.  *See Fulgham*, 349 S.W.3d at 157.  We resolve this issue in favor of PlainsCapital.

Regarding attorney's fees, PlainsCapital's claims against Martin for breach of the note, construction loan agreement, and deed of trust included claims for attorney's fees pursuant to sections 38.001 and following of the civil practice and remedies code and "applicable provisions of the Note and other Loan Documents between the parties."  As we have noted, the trial court's findings of fact and conclusions of law found Martin was liable for, among other things, attorney's fees "under the Note, Construction Loan Agreement, and Deed of Trust."  The trial court further found that the legal fees were reasonable and necessary, and the fees incurred defending the claims brought by Martin were also necessary to prosecute PlainsCapital's counterclaim against Martin because Martin pleaded that his claims were also defenses to PlainsCapital's counterclaim.

Under the American Rule, litigants' attorney's fees are recoverable only if authorized by statute or by a contract between the parties.  *Intercontinental Grp. v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009).  Section 38.001 of the civil practice and remedies code provides for the recovery of attorney's fees if, among other things, a claim is for an oral or written contract.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (West 2015).  A deficiency judgment is based on the amount of the note, interest, and attorney's fees less the amount

received at the trustee sale and other legitimate credits. *Moayedi v. Interstate 35/Chisam Road, L.P.*, 438 S.W.3d 1, 3 (Tex. 2014). An offset under section 51.003 operates as an affirmative defense to a deficiency claim. *Martin*, 459 S.W.3d at 557. We review a trial court's decision to award attorney's fees for an abuse of discretion. *Ridge Oil Co., Inc. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 163 (Tex. 2004).

Here, in his brief on original submission, Martin conceded that this case arose under chapter 38 of the civil practice and remedies code but argued it was not reasonable to award PlainsCapital attorney's fees "when it ha[d] not prevailed on its claim." In his post-remand brief, Martin challenges the award of attorney's fees on the grounds that the fees were not segregated, fees incurred in connection with PlainsCapital's defensive theories were not recoverable, and the hourly rates and overall fee were excessive. A party may not introduce an issue on remand that it failed to raise in previous appellate proceedings. *Neeley v. W. Orange-Cove Consol. Indep. Sch. Dist.*, 228 S.W.3d 864, 867 (Tex. App.—Austin 2007, pet. denied). Thus, Martin has waived the issues he raises in his post-remand brief. *Id.* To the extent Martin argued PlainsCapital was not entitled to attorney's fees because it had not prevailed on its claim, this argument now fails in light of this opinion. We resolve this issue in favor of PlainsCapital.

We affirm the trial court's judgment.


/David L. Bridges/
DAVID L. BRIDGES
JUSTICE


100235F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

WILLIAM MARTIN, Appellant

No. 05-10-00235-CV      V.

PLAINSCAPITAL BANK, Appellee

On Appeal from the 429th Judicial District Court, Collin County, Texas
Trial Court Cause No. 429-01773-2008.
Opinion delivered by Justice Bridges. Chief Justice Wright and Justice Brown participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee PlainsCapital Bank recover its costs of this appeal from appellant William Martin.

Judgment entered this 26th day of April, 2017.